John J. Sullivan
Kipp C. Leland
HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiffs
45 Broadway, Suite 1500
New York, New York 10006
(212) 669-0600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------X
ERIDAN SHIPPING LTD., as successor in
interest to KAMA MALTA SHIPPING CO.
LTD., and ANTARUS SHIPPING CO. LTD.,
as successor in interest to KAMA MALTA
1011 SHIPPING CO. LTD.,

    Plaintiffs,

    -against-

STANISLAV FILATOV

    Defendant.
-----------------------------------X

Index No. 07 CIV 6347 (HB)

**DECLARATION**

Dr. Jotham Scerri-Diacono, affirming under penalty of perjury declares and states:

1. I am an attorney duly admitted to practice law before the Courts of Malta, and am counsel of record for Plaintiffs in Malta. I have been requested by Hill Rivkins & Hayden LLP, New York, USA, to draw up and swear this declaration in connection with the enforcement of a money judgement (hereinafter referred to as *the Judgement*) that I have obtained on behalf of Plaintiffs in the First Hall of the Civil Court in Malta, Europe, against *inter alia*, Mr. Stanislav Filatov hereinafter referred to as the *Debtor* or, alternatively, as the *Judgement Debtor*.

2. I am a practising, litigation advocate in Malta working with the law firm of Ganado & Associates.

3. In and around mid-1998 the law firm of Ganado & Associates was approached by (1) Ferrum Shipping Co Ltd (hereinafter referred to as "Ferrum"), (2) Eridan Shipping Limited, successor in interest to Kama Malta Shipping Co Ltd (hereinafter referred to as "Eridan"), (3) Kama II Shipping Co Ltd. (hereinafter referred to as "Kama II), (4) Antarus Shipping Co Limited (hereinafter referred to as "Antarus") (the preceding

1

four companies I will refer to as *the Kama Group of Companies*) and (5) by Kama River Shipping Corporation Ltd (hereinafter "Kama River"), the latter being the major shareholder of the Kama Group of Companies. The first four companies are Maltese companies, whereas Kama River is a Russian company based in Perm, Russia. In this affidavit, all five companies are being referred to together as the *Clients*. The firm of Ganado & Associates was requested to advise and to institute on Clients' behalf proceedings in Malta against *inter alia* Mr. Stanislav Filatov a previous director of the Kama Group of Companies. In brief, the proceedings were intended to recover money that Mr. Filatov illegally and improperly misappropriated from the Kama Group of Companies during his directorship of those companies, and take all other related 'precautionary' action in Court to avoid Mr. Filatov dissipating the money he had already misappropriated. The charge was that Mr. Filatov had misappropriated the money for himself, for his family and for the companies E. I Holdings Limited (hereinafter "E. I. Holdings"), River Sea Shipmanagement Ltd. (hereinafter "River Sea"), and Capes Shipping Services Inc. ("Capes Shipping"). Clients informed us that Mr. Filatov had interests in E.I. Holdings and Capes Shipping.

4. Our main contact with clients was Mr. Todor H. Vassilev, an officer and director of the Kama Group of Companies. He was also the individual who, on behalf of Clients, investigated the misappropriation done by Mr. Filatov. Attached as Exhibit 1 is a true copy of an affidavit executed by Todor Vassilev and filed with the Maltese Court, which described to the Court in great detail his discovery of Mr. Filatov's misappropriation of Clients' assets entrusted to his care.

5. Ganado & Associates accepted the brief and commenced advising Clients on the necessary steps to be taken in Malta against Mr. Filatov in accordance with Maltese law.

6. Initially, when Ganado & Associates took on the brief in December 1997, we were requested to assist with regard to a police complaint made by Mr. Filatov against Mr. Vassilev regarding Mr. Vassilev's collection of corporate documents for his investigation, which is described in Mr. Vassilev's affidavit. Those charges were ultimately abandoned. There were other internal disputes erupting between Mr. Filatov, E. I Holdings, River Sea, and the Kama Group of Companies. One major dispute related to the insurance proceeds that became payable following the loss of the vessel *Anna John*. In this scenario, Dr. Mark Camilleri from the Maltese law firm of Camilleri Delia Randon & Associates was assisting Mr. Filatov and his companies, E. I. Holdings and River Sea.

7. Various Board and shareholder meetings were held outside Malta in an attempt to resolve the dispute. Mr. Vassilev had informed me that in one of the initial Board and Shareholders' meetings held in Istanbul, Turkey on the 16th February 1998, Mr. Stanislav Filatov was personally accompanied by his lawyer, Dr. Camilleri who had travelled to Istanbul from Malta specifically to assist his client. From this meeting and from telephone calls made to this firm by Dr. Camilleri, it was quite clear that Dr Camilleri was the lawyer assisting Mr. Filatov. I was informed by Mr. Vassilev that

2

Mr. Filatov and his lawyer walked out of the meeting a few minutes after it started claiming that the meeting was not properly convened.

8. As time passed, it became all the more clear that the disputes between the parties were not going to be resolved out of court. Apart from the occasion mentioned in the previous paragraph, Mr. Filatov did not attend any of the subsequent Board and Shareholders meeting that took place to address the various issues. It was at that stage, Clients asked us to take the necessary steps in Court in Malta in order to recover the funds that Mr. Filatov had misappropriated from the Kama Group of Companies. Various judicial proceedings were filed in Malta. The principal action consisted of a lawsuit filed against Mr. Filatov, against his wife Mrs. Irina Filatova and other members of the family, and against companies belonging to Mr. Filatov. Mr. Filatov's wife, other family members and Mr. Filatov's companies were included in the lawsuit and sued because they had directly benefited from Mr. Filatov's illegal actions. These proceedings were instituted in front of the First Hall, Civil Court, in Malta. In these proceedings the court was requested to consider the claim, decide on the merits and condemn Mr. Filatov and the other defendants to return the money that he had misappropriated. As an adjunct to these proceedings, the court was also requested to *injunct* (that is to say, to prohibit) Mr. & Mrs. Filatov from selling or otherwise disposing of their real estate (particularly a villa in Ta' l-Ibraġġ, Saint Andrews, limits of Saint Julians, in Malta) pending the outcome of the proceedings on the merits. The court was also requested to issue what is known under Maltese law as a 'garnishee order' (garnishment order) on Mr. Filatov's bank funds.

9. The jurisdiction of the First Hall, Civil Court, in Malta is defined by Section 742 of the COCP (copy attached as Exhibit 2). Section 742(1)(b) provides that jurisdiction is exercised by Maltese Courts over persons who are *resident* in Malta. Mr. & Mrs. S. Filatov had a residence permit in Malta at least up to March 1999 (see Exhibit 3) and this means that in their regard, jurisdiction was correctly exercised by the Maltese Courts. With regard to Mr. Filatov's 2 Maltese companies (E. I. Holdings & River Sea), the Maltese Court enjoyed jurisdiction in their regard also under section 742(1)(b) of the COCP because companies incorporated in Malta are considered to be resident and domiciled in Malta. Additionally, the jurisdiction of the Maltese Courts is also founded under Section 742(1)(c), which provides that jurisdiction exists over any person "in matters relating to property situate or existing in Malta". This paragraph (c) has been widely interpreted by Maltese courts (see for example Kevin Dingli noe vs Joseph Bonnici noe et decided by the Court of Appeal on the 14th January 2002, attached as Exhibit 4) to encompass a large array of situations where the subject matter of the dispute is connected to Malta. Applied to lawsuit number 411/99/GV, jurisdiction would have been founded by the Maltese Courts over the defendants in the lawsuit as the action concerned, primarily, the misappropriation of funds belonging to and held by Maltese companies. Moreover, 742(1)(f) also provides that jurisdiction exists over any person "in regard to any obligation contracted in favour of ... a body having a distinct legal personality or association of persons incorporated or operating in Malta, if the judgement can be enforced in Malta." Eridan and Antarus would be corporate bodies "incorporated or operating in Malta", and Mr. Filatov's acceptance of the position and duties Managing Director of

3

these companies would be an "obligation contracted in favour of" those corporate bodies. In view of the fact that Mr. S. Filatov breached his fiduciary duties as director of the Maltese companies, the jurisdiction of the First Hall, Civil Court to hear and decide the case is founded. The jurisdiction of the Maltese Courts is further reinforced on account of the fact that the facts of the case are closely connection to Malta: Mr. Filatov's illegal actions took place <u>in or from Malta</u> at a time when Mr. Filatov was a director of the four <u>Maltese</u> companies. Moreover, those illegal actions were <u>committed in Malta</u> and amount to criminal offences under <u>Maltese law</u>. Those actions were directed against <u>Maltese</u> companies. The preponderance of all the facts of the case point to Malta and a Maltese Court would have had no question on its right to assert jurisdiction over the defendants in these circumstances.

10. Taken chronologically, the *warrant of prohibitory injunction* proceedings were the first to be filed in Court. These proceedings were filed in Court on the 18th September 1998 and related to the request for the said injunction to be issued by the Court against Mr. Filatov prohibiting the latter to dispose of his real estate, particularly the villa that Mr. Filatov owned in Ta' l-Ibraġġ, Saint Andrews, limits of Saint Julians.

11. Clients had informed us that Mr. Filatov and his family had eloped from Malta and his precise address was unknown. For this reason, when on the 18th September 1998 the said injunction was filed, the Court was simultaneously requested to, as is standard practice and the law in Malta, appoint deputy curators to represent the interests of Mr. & Mrs. Filatov who were absent from Malta. The appointment of curators was requested for the injunction proceedings and for all other judicial proceedings connected with the claim. Under Maltese law (Section 929 of the Code of Organization and Civil Procedure - "COCP"), the curator 'appears in and defends proceedings' for and on behalf of absentees. This makes the curator an agent for service of the defendant, and the curator is also duty-bound to take all measures to identify and safeguard the rights of the absentees in those proceedings (COCP Section 936). When a curator is appointed to act for an absent defendant, the special rules on service upon the curators contained in Section 931 take precedence over the general rules of service, which are specified in Section 187 of the COCP (Exhibit 5). Exhibit 6 is an extract from Chapter 12 of the Laws of Malta, namely the Code of Organization and Civil Procedure, that contains the sections dealing with the role of the curator and his responsibilities and duties under Maltese Law.

12. The court issued the injunction 'provisionally' on the 18th September 1998. The Court pointed out in its decree that it would issue its final decision on the injunction at a later stage and went on to invite the respondents to file their 'reply' thereto.

13. The Registry of Courts in Malta the said warrant of prohibitory injunction is officially numbered 3299/1998 in the names "Kama II Shipping Co Ltd et versus Deputy Curators appointed to represent Mr. & Mrs. Stanislav Filatov", First Hall, Civil Court.

14. On the 18th of September, 1998 the warrant of prohibitory injunction number 3299/1998 was notified by the Court to the Public Registry for the purposes of registration. Any attempt by Mr. & Mrs. Filatov to transfer the villa or any real estate

4

that they owned *after* registration of the said warrant at the Public Registry would be null and void under Maltese law.

15. On the 24th September 1998, the Court approved the application for the commencement of the judicial process leading to the appointment of deputy curators. In such cases, a set procedure is followed according to law. Prior to the Court nominating (a) person(s) to act as curator(s) of the absentee, the person requesting the appointment of curators must have a Notice published, in Maltese and English, in the official Government Gazette. The said Notice contains (1) an extract from the proceedings and (2) a request to whosoever is interested to come forward and take up the curatorship of respondents in those proceedings. That same Notice is also published in two local daily newspapers and also posted up in Court in the designated Notice Board. The court officer (Mr. Andrew Grixti) in charge of this matter also certified that on the 28th September 1998 affixed the Notice on the designated Court Notice Board (Exhibit 7, top). Publication in the daily newspapers also took place: the Notice in the Government Gazette appeared on the 19th January 1999 (Exhibit 8). The Notice also appeared in English a daily newspaper called *The Times* on the 28th of January 1999 (Exhibit 9) and in Maltese in another daily newspaper called *L-Oriżżont* dated 30th January 1999 (Exhibit 10).

16. Attempts were also made to have a copy of the said Notice (also referred to as *Banns*) served upon Mr. Filatov's brother, Mr. Evgueni (Eugeniy) Filatov, who, it is believed, was living in Mr. Filatov's villa in Ta' l-Ibraġġ, Saint Andrews, in order to satisfy the legal requirement that in cases where the appointment of curators is requested a 'friend' of the debtor must be informed. Mr. E. Filatov had acted on behalf of his brother in the past and from the information we had, was in possession of Mr. Filatov's villa in Ta' l-Ibraġġ (Exhibit 11). The attempts to serve Mr. E. Filatov with the Notice failed: on the 14th October, 1998 the said court officer in charge of delivering the papers (Exhibit 4, bottom) certified that the envelope containing the Notice that had been posted to Mr. E. Filatov at the said villa remained "unclaimed" (see remarks of the court officer 'unclaimed' on Exhibit 7) and on the 20th October 1998 the court officer certified that he attended the residence on the 20th of October 1998 to hand deliver the Notice and 'nobody opened' (*ma fetah hadd*): see middle of page of Exhibit 7.

17. It was never clear to Clients as to where best to notify the Filatov because of the contradicting information. For example, Mr. Filatov's address is still recorded (in the official records at the Registry of Companies, at the Malta Financial Services Authority, in Malta) as that at *Echucu*, Triq tal-Franciz, Ta' l-Ibraġġ (Swieqi) (Exhibit 12).

18. Nobody from the general public took the necessary action in Court to record officially their willingness to act as Mr. Filatov's curator. As a result, the Court on the 8th of February 1999 moved on to appoint, 'ex officio', a lawyer, from an official list of lawyers and a legal procurator from the official list of legal procurator to represent the absentees. The Court then formally appointed Dr. Joseph Azzopardi and Legal

5

Procurator Joanna Dingli as deputy curators to represent, *inter alia*, Stanislav Filatov and Capes Shipping.

19. The above steps fully satisfied all requirements under Maltese Law for the First Hall of the Civil Court to assert its jurisdiction over Mr. (& Mrs.) Filatov.

20. The curators were eventually notified with the injunction and replied thereto in the sense that they said they did not know anything about the case and were not in a position to reply because they did not communicate with the persons concerned.

21. On the 12th of February 1999 the Court confirmed the injunction.

22. Eventually, the curators Dr J Azzopardi and PL Joanna Dingli acting for and on behalf of Mr. & Mrs Filatov filed proceedings on the 20th September 2000 in the First Hall Civil Court against Clients requesting the court to revoke the warrant of prohibitory injunction number 3299/1998 unless Clients puts up a guarantee to make good for the penalties, damages and interest that may be due to Mr. & Mrs. Filatov. This request was denied by the Court.

23. In the mean time, there were separate developments on another front. A few days prior to September 21, 1998, Mr. Filatov travelled to Malta and with a contract dated 21st September 1998 entered into a public deed for the sale of the villa to a company called Koufra Holdings Limited. This contract is enrolled in the records of Notary Remigio Zammit-Pace. On the basis of this document Koufra Holdings Limited paid the contracted price to Mr. & Mrs. Stanislav Filatov (approximately US$300,000.00). The validity or otherwise of the contract was the subject of an independent lawsuit in Malta in the names "Koufra Holdings Limited versus Eridan Shipping Limited et" writ of summons number 2352/99/GC. The lawsuit was instituted by Koufra Holdings Limited who wanted a court declaration in the sense that the contract in virtue of which it had acquired from Mr. Filatov the said property was valid and not effected by the said Injunction number 3299/1998. The point was not clear. Initially, the matter was decided by the Civil Court, First Hall, on the 12th November 2004. In its judgement the Civil Court decided that the Warrant of Prohibitory Injunction number 3299/1998 issued by the Court on the 18th September 2007 did not have any bearing on the sale that had taken place been Mr. S. Filatov and Koufra Holdings Limited enrolled in the records of the said Notary Zammit-Pace. The outcome of the lawsuit can be explained as follows: indeed, the warrant of prohibitory injunction 3299/1998 had been granted and issued by the court on the 18th September, 1998. The said Injunction was registered at the Public Registry on that same very day, just minutes before the Registry closed. But the 18th September 1998 happened to be a Friday. The Registry was closed the following Saturday and Sunday (19th and 20th September). Monday September 21st was a public holiday and once again the Registry was closed all day. Mr. Filatov sold the property that Monday 21st September, a public holiday. The Court held that once buyers (Koufra Holdings Limited) had no opportunity, prior to the conclusion of the contract on the 21st September, to discover that the Injunction had been effectively registered at the Public Registry (the Registry was closed from the afternoon of Friday 18th through to Monday the 21st September), the contract was

6

'saved' from its effects and was, therefore, valid at Law. In other words, had Mr. Filatov sold the property one day later (22nd September) that contract would have been null. The fact that the contract had been done within the space of a very short time after the Court granted the Injunction (18th September) and on the public holiday that followed the weekend of the 19-20th September was indeed unfortunate to Clients. This meant that Clients lost the *only* major asset that Mr. S. Filatov had in Malta upon which they could enforce the Judgement they had obtained against him from the Maltese court (writ of summons 411/99/GV). The Kama Group of Companies appealed from the judgement of the first court, however, the Court of Appeal (the highest court in Malta) with its decision of the 6th of July 2007 confirmed the judgement of the lower court (Exhibit 13). No further appeal is possible and the judgement writ of summons number 2352/99/GC is now *res judicata*.

24. Prior to the aforementioned decision of the Civil Court of the 12th November 2004, Koufra Holdings Limited, on its part, had commenced various judicial proceedings against Mr. & Mrs. Filatov, in Malta, in order to protect its interest in the eventuality that the said contract is held to be null and void. Amongst others, Koufra Holdings Limited applied for and obtained from Court garnishee order number 3742/98 in the names "Koufra Holdings Limited versus Stanislav Filatov and Irina Filatova". In those proceedings Advocate Dr Tonio Azzopardi and Legal Procurator Ms. Juliana Scerri-Ferrante were appointed curators to represent Mr. & Mrs. Filatov. The request for the appointment of curators to represent the interests of the absentees Mr. & Mrs. Filatov followed *mutatis mutandis* the same procedure that was followed by Clients and described *supra*. There was, however, one important difference, namely that it was Dr. Mark Camilleri this time that was effectively notified with the Banns (or Notice) containing an extract of the proceedings instituted by Koufra Holdings Limited against Filatov. Dr. M. Camilleri was notified on the 6th November 1998 (Exhibit 14). Nevertheless, Dr Camilleri chose not to select to take up representation of Mr. & Mrs. Filatov in the lawsuit brought by Koufra Holdings Limited against Mr & Mrs Filatov. Nobody from the public came forward to take up their curatorship and it was for this reason that the court appointed, from the court curator list, Dr. T. Azzopardi and PL J Scerri-Ferrante to again act as curators for Mr. Filatov in those proceedings. The proceedings that were taken against Mr and Mrs. S Filatov by Koufra Holdings Limited consist of the following proceedings filed in the First Hall of the Civil Court of Malta:

- garnishee order 3742/98 for the sum of US$300,000.00.
- warrant of prohibitory injunction 3742/98 for the same sum
- warrant of prohibitory injunction 3931/98
- court order for the deposit of funds number 3932/98
- garnishee order 4285/98
- writ of summons 2255/98/GC
- writ of summons 2385/98/GC
- writ of summons 2807/98/GC

25. A few days after the warrant of prohibitory injunction 3299/98 was confirmed by the Court, we proceeded to file on behalf of Clients the proceedings on the merits (writ of

7

summons 411/99/GV). Proceedings were effectively instituted on the 18th February 1999 in the First Hall of the Civil Court against *inter alia* Mr. & Mrs. Filatov, Evgueni Filatov, Capes Shipping, E. I Holdings and River Sea. In these proceedings, the latter two companies were represented by Camco (Nominee) Limited (hereinafter "Camco"). Camco, at the time judicial proceedings were instituted, was 'company secretary' of both River Sea and E. I. Holdings. Camco was vested, both under the legislation applicable at the time and in virtue of the memorandum and articles of incorporation of the companies, with the judicial representation of River Sea and E. I. Holdings. It was for this reason that proceedings were instituted against Camco in its aforementioned capacity for an on behalf of River Sea and E. I. Holdings. Camco operates from the address of the law firm of Dr Mark Camilleri (mentioned above). Dr Mark Camilleri is a shareholder of the company, a director and its judicial representative. Camco is a *nominee company* – as such capacity it had the power to hold shares on a *nominee* basis for the benefit of foreign, undisclosed principals who incorporated offshore companies in Malta. Prior to accepting to act as nominee shareholder Camco was statutorily bound to identify all the beneficial owners for whom it was to act as nominee and satisfy itself of the credibility and reputation of such persons. It normally did this by obtaining references from banks, law firms accountancy firms etc. Additionally, it also had the role of acting as company secretary of those same offshore companies. Except as specifically provided for in law a *nominee company* is legally barred from divulging for whom it acts. Since 31st December, 1996 it is no longer possible to set up offshore companies and all offshore companies have now been since phased out.

26. Camco, for and on behalf of E. I Holdings and River Sea, filed Statements of Defence on the 20th August 1999 (Exhibit 15 is the statement of defence of River Sea – the statement of defence filed by E. I. Holdings was identical to that of River Sea). Mr. Filatov's Maltese attorney, Dr. Mark Camilleri for and on behalf of Camco personally confirmed the statement of facts (Exhibit 15, indicating Dr. Mark Camilleri "confirmed on oath the correctness of the declaration" to the court registrar). The statements of defence of the two companies were signed by Dr. Joseph Schembri, Dr. Stefan Camilleri and Dr. Lennard Depasquale, all lawyers of the law firm Jos. A. Schembri & Associates (refer http://valletta.usembassy.gov/list_of_attorneys.html) in Valletta, Malta. Camco, for and on behalf of E. I Holdings and River Sea, who put up a strong defence. These two companies put forward four (4) main lines of defence to the Court -

(i)   Plaintiffs' case as directed against them was unfounded in fact and at law and should be rejected by the court.

(ii)  The courts had no jurisdiction over them because the enjoyed the special status as *offshore* companies and were therefore not resident in Malta.

   Before entering into the merits of the case, the court moved to decide this point of law. After submissions were made, the Court pronounced judgement during the hearing of the 31st May 2000, dismissing the arguments of the said two companies that the court did not have jurisdiction to hear the case. A summary in English of

8

this decision was reported by *the Times* newspaper on the July 17, 2000 (Exhibit 16). The judgment was also brought to the attention of the authorities, Malta Financial Services Centre, with a letter dated 31st August 2000 for them to take the necessary action (Exhibit 17).

(iii) Insofar as the allegations that were being made in the proceedings, there was no juridical relationship between the two companies and Plaintiffs and for this reason the two defendant companies should be non-suited with costs.

(iv) The allegations that were being made insofar as they referred to the defendant companies were very vague and without any juridical basis and one can only equate them with a fishing expedition and for this reason cannot legally be sustained.

27. The curators representing Mr. Filatov (Dr Joseph Azzopardi and LP Dingli) were notified with the said writ of summons 411/99/GV in their capacity as curators of Mr. & Mrs. Filatov. They filed a defence on the 27 September 1999 declaring that they did not know the facts of the case and reserved to present their defence at a later stage.

28. The Court commenced to hear the lawsuit on the 19th October 1999 and the Court decided the case and issued a Judgment on February 27, 2006.

29. There were a number of witnesses who took the stand and various documents and affidavits were filed. Amongst the witnesses that took the stand was Mr. Stephen Parnis England from whose office the Kama Group of Companies operated in Malta, and the secretary of Mr. Stanislav Filatov who gave evidence under oath twice. On the 20th March 2003 she confirmed in Court that Mr. Filatov was involved (her words translated literally from the original Maltese 'had a relationship with') the defendant River Sea and E.I Holdings Limited. She confirmed that he used to run these companies (Exhibit 18, p. 2).

30. In addition to the first Affidavit of Mr. Vassilev (attached herein as Exhibit 1), the following additional testimony was received by the Court and considered by the Court in arriving at its Judgment:

a) The second affidavit of Mr. Vassilev (a true copy of which is attached as Exhibit 19).

b) The deposition of Mr. Vassilev (a true copy of which is attached as Exhibit 20).

c) The affidavit of Mr. Leonid Iougov, shareholder of Kama River and director of Eridan, Antarus, and Ferrum (a true copy of which is attached as Exhibit 21).

d) The deposition of Ms. Audrey Cefai, secretary of Mr. Filatov (a true copy of which is attached as Exhibit 18 along with a certified translation of same.

9

e) The affidavit of David Peter Bennett, a Solicitor with the law firm Clyde & Co in London (a true copy of which is attached as Exhibit 22).

31. Though Mr. Vassilev uncovered a great many instances of Mr. Filatov misappropriating assets of the Clients, to simplify proceedings and minimize the costs of going forward in Malta it was decided to limit the claim to US$1,054,656.00. Court costs and lawyers' fees in Malta are set according to a legal tariff and calculated *ad valorem* – the higher the claimed amount, the higher the costs and fees.

32. We are not informed as to what steps the curators took to learn about the case and take the necessary steps to defend it. The practice in such cases in Malta is for the advocate-curator to trace the person he would be representing and obtain instructions. We are not informed whether or not the curator made contact with the absentees Mr. Filatov and his wife or what (if any) instructions he received from them. It was understood amongst the lawyers involved that Mr. Filatov had retained at the start of the dispute the legal services of Dr. Mark Camilleri (Camilleri Delia Randon & Associates) in Malta. In any event, under Maltese Law the curators were properly appointed to represent and speak for Mr. Filatov and his wife, and all the formalities that the Court required in this regard to assert its jurisdiction over Mr. Filatov were followed.

33. Sometime in the first quarter of 2005, about a year before the case (writ 411/99/GV) was decided by the Court, a separate dispute arose between Eridan and River Sea regarding the insurance recovery for the loss of the vessel *Anna John*. Dr. Mark Camilleri acted on behalf of River Sea in this case and reached an out of court settlement directly with Mr. Vassilev who was acting for Clients. On the basis of an agreement reached between Dr. Camilleri and Mr. Vassilev, River Sea agreed it had no interest in the insurance funds received for the *Anna John*, and the same were distributed to Eridan.

34. On February 27, 2006, the First Hall of the Civil Court of Malta issued a Judgment in favour of Eridan and Antarus and against Mr. Filatov in the total amount of US$1,054,656.00 with interest and costs (referred to throughout this affidavit as the "Judgment"). A true copy of the Judgment is attached as Exhibit 23, and a certified translation of the Judgment is attached as Exhibit 24. Interest under Maltese law is set at a rate of 8% per annum – this is simple interest (as opposed to compound interest) and is, therefore, not capitalised. It runs from the date of the judgement. Costs recoverable from Mr. Filatov are established under a Taxed Bill of Costs (Exhibit 25) and amount to Lm9,800.24 (approximately US$32,341) + Lm1,081.02 (approximately US$3,567.36, being VAT on professional fees at 18% of Lm6,005.66) = Lm10,881.90 (US$35,910.27) The fees that Clients provisionally paid out to the curators as per the said Taxed Bill of Costs are likewise recoverable (Lm5,797.33 + 1042.98 (18% VAT on Lm5,794.33) = Lm6840.31 = US$22,573.02) are also recoverable. This means that in total the sum of US$58,483.29 is recoverable in costs from Mr. S. Filatov.

10

35. The total Judgment amount of US$1,054,656.00 against Mr. Filatov was divided as follows: the Judgment awarded against Mr. Filatov and to Eridan the amount of US$1,043,656.00, and against Mr. Filatov and to Antarus the amount of US$11,000.00. The Judgment also apportioned joint liability (by the translated language "The defendant [Filatov] in solidum with") to the following companies as follows:

    a) River Sea was held jointly liable with Mr. Filatov to Eridan in the amount of US$372,265.00.

    b) E. I. Holdings was held jointly liable with Mr. Filatov to Eridan in the amount of US$591,391.00.

    c) Capes Shipping was held jointly liable with Mr. Filatov to Antarus in the amount of US$11,000.00.

36. Pending the outcome of the proceedings on the merits, there were other 'precautionary' judicial proceedings taken in Malta against Mr. Filatov in an attempt to freeze any assets that the latter may have kept in Malta:

    - garnishee order number 745/1999
    - garnishee order number 787/1999
    - warrant of Prohibitory Injunction number 1159/1999
    - garnishee order number 862/1999
    - garnishee order number 861/1999
    - garnishee order number 651/2003

37. After the Maltese Court issued its Judgment against Mr. Filatov, River Sea, E.I. Holdings, and Capes Shipping, various steps were taken in Malta in an attempt to have the Judgement enforced on assets belonging to Mr. Filatov in Malta. The following were successful and yielded some return, albeit nominal, for Clients -

(i)   An executive garnishee order number 447/2006 was obtained. Following the entry of this order the amount of Lm 340 (approximately US$1,100.00) was recovered from Mr. Filatov's bank account held with Bank of Valletta plc.

(ii)  On the 27th April, 2006, a general hypothec was registered, which under Maltese Law gave public notice that all assets of Mr. Filatov in Malta are restrained in favor of the Judgment creditors. A true copy of the Hypothec is attached as Exhibit 26.

(iii) 1,200 Bank of Valletta plc shares belonging to Mr. Filatov were sold during a judicial sale by auction number 54/2006. Eridan competed with other bidders for the shares and acquired them in set off of its claim for the price of Lm 4,350 (approximately US$13,150.00).

    (iv)    As Mr. Filatov owns one share (1%) of Kama II, his 1% share of the dividends issued by the company were seized as a set-off to the Judgment. Accordingly, the first dividend issued subsequent to the Judgment (1% of US$166,273.93, or US$1,662.73) was recovered by Clients. A second dividend issued (1% of US$82.834.06, or US$828.34) was recovered pursuant to the Judgment.

38. Accordingly, to date, a total of US$16,741.07 has been recovered under the Judgment in Malta, thereby reducing the amount due from the US$1,054,656.00 awarded by the Court to US$1,037,914.93.

39. On the 6th of August 2003, a copy of the Judgement was also mailed to the Registry of Companies (http://registry.mfsa.com.mt) for it to be filed in the public files of E. I Holdings and River Sea (Exhibit 27) to serve as public notice of the Judgement.

40. No appeal was made from the Judgement, and the time to file an appeal has lapsed. Attached as Exhibit 28 is a true copy of a certificate issued by the Registry of Courts in Malta that confirms no appeal has been filed from the Judgment, and attached as Exhibit 29 is a certified English translation of the certificate.

    Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Valletta, Malta
August 20, 2007

Dr. Jotham Scerri-Diacono

Sworn in presence
This the 20th day of
August 2007.

Dr. Gerard Spiteri Maempel LL.D.
Notary Public and
Commissioner for Oaths
141, Old Bakery Street

12