This is to certifiy that the attached documents are true copies of the originals taken from the archived court file writ of summons 411/99/GV First Hall, Civil Court, in the names "Adv. Dr. Jotham Scerri Diacono nomine –vs– Adv. Dr. Joseph Azzopardi et noe et".





**REPUBBLIKA TA'MALTA**
**KONSULAT ĠENERALI**



REPUBLIC OF MALTA
HON. GENERAL CONSULATE OF ISTANBUL

MALTA CUMHURİYETİ
İSTANBUL BAŞKONSOLOSLUĞU (F)

**ISTANBUL – TURKEY**

To whom it may concern,

I confirm that the affidavit of Mr. Todor Hristo Vassilev son of Mrs. Svetoslavka Vassileva and Mr. Hristo Vassilev currently residing in Turkey, holder of a Bulgarian passport Nr. 306 457 110 was confirmed on oath in my presence on 10.04.2002.



Oğuz Teoman
Hon. Consul General

ISTIKLAL CADDESİ. KORSAN ÇIKMAZI. AKDENİZ APT. KAT. 2 BEYOĞLU / ISTANBUL / TURKEY
TEL: (++90 212) 244 28 95 - 249 81 62 - 243 03 28.  FAX: (++90 212) 293 35 14 - 252 97 96  TLX: 38173 oteo TR

AFFIDAVIT

1. I the undersigned Todor Hristov Vassilev wish to make the following formal statement to be used in the court case instituted by Eridan Shipping. Ltd., Kama II Shipping Co. Ltd., Antarus Shipping Co. Ltd., Ferrum Shipping Co. Ltd.[1] against Stanislav Filatov, Irina Filatova, Vadim Voronine, Anna Filatova, Evgueni Filatov, Capes Shipping Services Inc., River-Sea Shipmanagement Ltd. and EI Holdings Ltd. This lawsuit has been filed in Malta on the 18th of February, 1999: writ of Summons Number 411/99/GV.

2. I am making and confirming this statement on oath in front of the Maltese Council General in Istanbul, Turkey. I do not speak Maltese and that is why I have been directed to draw up this affidavit in English.

3. I have been instructed by the majority shareholder of the claimant companies to investigate the management of Kama Group of Company's affairs by Mr. Stanislav Filatov, a former director of the said companies, for the period when he was in charge of the companies, and further to give witness statements before the Maltese Court of Justice.

4. The majority shareholder of the claimant companies mentioned in the preceding paragraph is Kama River Shipping Co., a shipping company incorporated and based in Perm, (Russian Federation). I take my orders from Mr. Mikhail Antonov the chairman of the board of directors of Kama River Shipping Co. Kama River Shipping Co is also a plaintiff in the above-mentioned judicial proceedings. I hold a power of attorney issued by Kama River Shipping Co and I am a director of the rest of the companies in the group. The majority shareholder has an interest that Mr. Stanislav Filatov be brought to justice because the losses suffered by the four other plaintiff companies (the Kama Group) have been passed on to their shareholders and, therefore, onto Kama River Shipping Co. in particular.

The Establishment of the Kama Companies in Malta

5. The decision to incorporate a company in Malta was taken, some time in 1992 or thereabouts, by the majority shareholder who intended to operate a company in Malta. Mr. Stanislav Filatov was given charge of incorporating the company and to run its management. He had traveled to Malta to set up the Company. This took place in 1993 or thereabouts.

6. The first company that was established in Malta was Kama Malta Shipping Company Limited. This company is today called Eridan Shipping Limited and is one of the plaintiffs in the lawsuit above mentioned.

7. Two other companies were formed which were initially named (i) Kama Malta 1011 Shipping and (ii) Kama Malta 5089 Shipping Ltd. They had the same or similar shareholding structure as Kama Malta Shipping Company Ltd.[2] In 1996 these companies changed name and are now called (i) Antarus Shipping Company Limited and (ii) Ferrum Shipping Company Limited, respectively. These latter two companies are also plaintiffs in the mentioned lawsuit.

*Oguz Croman*
*Hon. Consul General*

---

[1] Hereinafter referred to together as the "*Kama Group of Companies*" or the "*Kama Group*".
[2] Which today is named *Eridan Shipping Co Ltd.*

*Wednesday, 10 April 2002*
*C:\WINDOWS\Temporary Internet Files\OLK33A4\Final Version Temporary.doc*

Page 1 of 15

8. Subsequently, a forth Company was incorporated and this was named Kama II Shipping Company Limited. This company is also one of the plaintiffs in the said lawsuit. Its shareholding structure was 499/500 shares belonged to Kama Malta Shipping Company Limited, 1/500 share belonged to Mr. Stanislav Filatov.

9. Other companies were also incorporated in Malta, such as Kama Malta 5063 Shipping Limited and Rifey 5040 Shipping Company Limited. I could not trace any wrongdoing by Mr. Stanislav Filatov in their regard and so these other companies do not feature as plaintiffs in the ongoing Court proceedings.

10. The companies incorporated in Malta formed a 'group'. In this affidavit I am referring to the four Kama Companies, the plaintiffs in this case, as the "Kama Group of Companies" or the "Kama Companies" or the "Kama Group".

11. The said Kama Companies were and involved in the shipping industry. Kama Malta Shipping Company Limited in particular owned two (2) dry cargo vessels.

12. Kama River Shipping of Perm, on the other hand, owned the following (5) five vessels: Volgodon 5023, Volgodon 5024, Volgodon 5026, Volgodon 5040 and Volgodon 5042. The vessels owned by Kama Malta Shipping Company Limited as well as the vessels owned by Kama River Shipping of Perm, were engaged mainly in trading in the Black Sea and Mediterranean freight markets. They plied between Russian and Mediterranean Ports.

13. Kama River Shipping did not operate ships themselves but bareboat chartered the vessels to third parties. For example, the vessels Volgodon 5023, Volgodon 5024, Volgodon 5026, Volgodon 5040 and Volgodon 5042 were all bareboat-chartered-out to the defendant company River Sea Shipmanagement Company Limited. The bare-boat charter lasted between the years 1995 to 1997. According to the bareboat charter agreement which was entered into, River Sea Shipmanagement Limited had to invest funds for the upgrade of the ships and trade them against it on the conditions of a bareboat charter. For this purpose, Mr. Stanislav Filatov used, apart from the above-mentioned company River Sea Shipmanagement Limited, another company of his, likewise incorporated in Malta as an offshore company, named E.I. Holdings Limited and another off-shore company River-Sea Ltd.

14. In the beginning of April 1997, during a meeting of the shareholders of the Kama Group of Companies, it was decided that three vessels owned by the Kama Group i.e. the m/v Volgodon 5083, the m/v Volgodon 5063 and the m/v STK 1011 be handed over to W.J. Parnis England Limited, a Maltese company, to operate and manage together with Group Kalkara Shipping, a company based in Istanbul.

15. It was decided by the shareholders in 1997 that the other ships owned by the Kama Companies, namely the m/v Volgodon 5087, the m/v Volgodon 5086 and the m/v STK 1014 be managed by Rifey 5040 Shipping Company Limited (Malta). In fact, Rifey 5040 Shipping Company Limited did the commercial operation of the ships bareboat chartered by Kama River Shipping to River Sea Shipmanagement Ltd (m/v Volgodon 5023, m/v Volgodon 5024, m/v Volgodon 5026, m/v Volgodon 5040, m/v Volgodon 5042). This was done under the

*Wednesday, 10 April 2002*
C:\WINDOWS\Temporary Internet Files\OLK33A4\Final Version Temporary.doc

Ogus Troman
Consul General

Page 2 of 15

everyday control of Mr. Stanislav Filatov, who was in contact with us in the Kama Group's office in Malta by phone or fax from USA. Rifey 5040 Shipping Company Limited is also owned by Kama River Shipping of Perm, Russia.

### role of Mr. Stanislav Filatov within the Kama Group in Malta

In 1993 or thereabouts, upon the incorporation of the Kama Group of Companies in Malta, Mr. Stanislav Filatov relocated with his family form Russian Federation to Malta. At certain time they settled in a villa called "Eucucha", in St. Andrews.

Mr. Stanislav Filatov was the highest-ranking official of the group in Malta and effectively he directed, managed and ran the Kama Group of Companies. What Mr. Stanislav Filatov would say would be implemented without question from anybody. He had full control over the operations of the Kama Group and, more importantly for the purposes of this lawsuits, he had full control over the funds and moneys of the Kama Group. He was (upon my arrival in Malta in 1996) the sole signatory of all known bank accounts and sole holder of the test key facility of Hambros Bank used for telex transfer orders. By means of the last key facility, Mr. Filatov could order by a telex message transfers from the bank accounts of the Kama Group of Companies to anybody he decided.

18. Apart, from holding the test key facility, in 1996 when I joined the staff of the Kama Group, Mr. Stanislav Filatov had full control of the money belonging to the Kama Group because he was the sole signatory of the Kama Group of companies' respective bank accounts. Mr. Stanislav Filatov remained the sole signatory till early 1997 when under his instructions the shareholders of the companies authorized Mr. V. Voronine and me to be also signatories on the accounts of Ferrum Shipping Company Limited, Antarus Shipping Company Limited and Rifey 5040 Shipping Limited. Till that time his signature was sufficient on its own to allow him to order the banks to transfer funds out of the companies' accounts to any beneficiary, as he directed.

19. Mr. Stanislav Filatov was given the authority by the Board of Directors to control the funds belonging to the Kama Companies. Mr. Stanislav Filatov abused of his position of trust.

20. Apart from his executive and managerial role, Mr. Stanislav Filatov was, for a number of years, also one of the directors of the four Kama Companies. In the initial years it was Mr. Stanislav Filatov the person who liaised with the representatives of the majority shareholder of the Kama Group.

21. In April 1996, Stanislav Filatov and his family moved out of Malta to United States of America. We are informed that Mr. Stanislav Filatov and his family continue, to this day, to reside in the USA. Once we had in hand strong indication that Mr. Filatov had misappropriated money belonging to the Kama Group, we engaged private investigations to trace Mr. Filatov and identify his assets around the world. From the investigations made, we discovered that Mr. Filatov and his family obtained 'green cards' and live in New York. Our American private investigator reported to us that Filatov and his family adopted the practice of paying their bills by corporate credit cards, allowing them to remain anonymous for payment tracers.

...day, 10 April 2002
...DOWS\Temporary Internet Files\OLK33A4\Final Version Temporary.doc

Troman
...al General    Page 3 of 15

22. In the middle of January 1997, a meeting of the shareholders of the group of companies took place in Malta. During this meeting Mr. Stanislav Filatov resigned from the board of directors of the Kama Group and declared that took the position of a consultant. He, nevertheless, continued to run the everyday business of the companies and to control all payments by his approval or refusal.

23. Eventually in December 1997 Mr. Stanislav Filatov set up his re-appointment and the appointment of a certain Mr. Artour Aroustamov as directors of Kama II Shipping Co. Ltd without the necessary authorization from the shareholders.

The Role of the Undersigned Todor Hristov Vassilev within the Kama Group in Malta

24. My own involvement with the various shipping companies forming part of the Kama Group. It started in 1994 when I was offering broking services to Kama Malta Shipping Co. Ltd.[3] At that time I was employed and based in Bulgaria. Subsequently, in January 1996, I was invited to continue working as a shipbroker with Kama Malta Shipping Co. Ltd. from Malta. However, due to reasons unknown to me Mr. Stanislav Filatov arranged my work permit from his company River-Sea Shipmanagement Ltd. I was officially employed with this company but I did all chartering and all operations work for the ships of Kama Group together with the chartering and operations work for the ships bareboat chartered by River Sea Shipmanagement from Kama River Shipping. I remained in Malta working as a shipbroker with the Kama Group of Maltese companies until 8th December 1997.

25. Apart from my working role as a shipbroker for the Kama Group, I was, during the above-mentioned meeting of the shareholders of the Kama Group that took place in mid-January 1997, appointed director of each of the four companies that formed part of the Group.

26. I specifically recall that in 1997 I was appointed a signatory to the bank accounts held by the Kama Companies with Maltese banks. I was also appointed manager of the ships owned by the Kama Group.

27. During the above-mentioned meeting of the shareholders of the Kama Group that took place in the middle of January 1997, Stanislav Filatov granted to me his shares in Kama Malta Shipping Co. Ltd (presently Eridan Shipping Co. Ltd.).

Other Employees and Officials of the Kama Companies

28. Working within the Kama Group of Companies in Malta were other individuals, Maltese and foreigners. There was Mr. Vadim Voronine who worked as an executive director; Mr. Boris Kobelev, a technical manager; Mr. Iouri Podoliak an operations manager; Mr. Robin Parnis England, an insurance manager; and Ms. Audrey Arrigo nee' Cefay who was a secretary to Mr. Stanislav Filatov.

29. In the end of 1996, all employees of the Kama Group of Companies (except Mr. Vadim Voronine, Mr. Robin Parnis England, Ms. Audrey Cefay and myself) had left. Mr. Andrey Apourine joined the group of companies as an apprentice.

---

[3] This company is today named *Eridan Shipping Co Ltd*.

30. In the beginning of April 1997, Mr. Vadim Voronine left the group of companies too.

The Location of the Offices of the Kama Companies

31. The four Maltese companies which formed the Kama Group operated originally from the premises at 60, South Str. Valletta. Within these premises the offices of W. J. Parnis England Ltd are housed. In November 1996 by order of Mr. Stanislav Filatov the Group of Companies moved its offices from 60 South Str. Valletta, to the villa of Mr. Stanislav Filatov, at Triq tal-Franciz, St. Andrews.

The Investigation of Mr. Stanislav Filatov

32. The decision of the majority shareholder of the Kama Group of Companies to commence investigating Mr. Stanislav Filatov was taken some time in August 1997. This decision came about because the Maltese companies were making only losses and their ships and the ships of Kama River Shipping bareboat chartered to River-Sea Shipmanagement Ltd were creating debts all around the market, notwithstanding the fact that the ships owned by the group were regularly engaged in trade. In fact River Sea Shipmanagement had at that time stopped paying any charter hire money to Kama River Shipping and had avoided insuring and repairing the ships although obliged to do so according to the terms of the bareboat charter. The majority shareholder had become suspicious that Mr. Stanislav Filatov was not handling the financial affairs of the Kama Group of Companies' well. There was a growing suspicion that Mr. Stanislav Filatov had used Company funds for his own personal interests or for those of his family, friends or his companies.

33. In the beginning of August 1997, Mr. Mikhail Antonov (who represents the majority shareholders of Kama River Shipping, I referred to earlier) ordered me to pay him a visit in Perm, Russian Federation. It is during this meeting that I was given instructions to conduct investigations upon Mr. Stanislav Filatov.

34. I personally conducted and spear-headed the large part of the investigations carried out against Mr. Stanislav Fialtov. All investigatory work was carried out on the basis of documents that were left in the archive of the Kama Group of Companies and on the basis of the statement of accounts issued by the servicing banks where the accounts of the Kama Group of Companies' were held.

35. As soon as I returned to Malta after my meeting with Mr. Mikhail Antonov, I moved the archive of the Kama Group and other office papers and equipment of the Kama Group of companies from the villa of S. Filatov in St. Andrews to my flat in St. Andrews, because I was afraid that Mr. Stanislav Filatov would destroy it. This happened between the 16th and 19th of August 1997. However, I was forced by Mr. Stanislav Filatov to surrender back the archive of the group of companies to Mr. Stephen Parnis England at 60, South Street, Valletta. Regretfully, in August 1997, whilst the archive was kept at this address in Valletta, part of the archive was destroyed by Stanislav Filatov. H did this while this archive was kept in the office of W. J. Parnis England in 60, South Street, Valletta. This hindered my work. Filatov destroyed part of the archive because he started suspecting that we were investigating him. He wanted to cover his tracks.

36. My investigations consisted in reviewing all the documents of the companies which formed part of the Kama Group and scrutinizing them to discover whether I could trace transactions which evinced money passing out of any of the four companies to recipients which had nothing to do with the business of the company. These payments would have been unauthorized. I also asked the banks with which the companies banked to produce statements of the accounts. I also examined the cheque book stubs.

37. I must point out that during the time Mr. Stanislav Filatov worked in Malta for the Kama Group, I was responsible for the chartering and operating of all ships. Therefore, I knew very well the ships' running costs and variable expenses and the freights that the company collected for the chartering of the ships. I had a good idea what was going on. In a few months, I started realizing that Mr. Stanislav Filatov could do whatever he liked. All employees were afraid of being expelled from employment and from Malta for any disobedience to Mr. Stanislav Filatov who was paying the salaries with two or three months delays. He could revoke work permits of employees as these were normally issued by his company River-Sea Shipmanagement Ltd. I, therefore, can say that I witnessed personally the most important events that happened in Malta during the period from January 1996 onwards.

38. The most astonishing for me was to note, immediately upon my arrival in Malta, that there was no bookkeeping and no proper auditing of the companies' accounts. In fact, till my arrival in Malta in January 1996 no one had ever bothered to issue a freight or demurrage invoice and to record these in the company books. Nobody ever made a voyage estimate or a final account. Nobody took any labours to check final disbursements, to pay or collect outstanding balances. Finalizing voyage accounts and keeping a voyage file for each charter for each ship became a practice which I introduced.

39. My investigations led me to conclude that Stanislav Filatov had been, throughout the years, withdrawing money from the bank accounts of the Kama Group of Companies and utilizing those funds for his own personal interests that were not in any way connected with the business of the Kama Group of Companies. In fact, Mr. Stanislav Filatov had no authority to make these payments or transfers (which I will describe in more detail below) and these payments were unauthorized in that they did not have the consent and support of the Board of Directors of the Kama Group of the other Company in Perm, Kama River Shipping Company Limited. For example, he also used company funds to pay for his wife's and his daughter's personal expenses (including traffic fines). The above mentioned lawsuit has been instituted in order to obtain back as much as possible of that money. It is intended to obtain from Stanislav Filatov a refund of the funds that have been misappropriated from the Kama Group. The said lawsuit, however, has also been instituted against Irina Filatova, Stanislav Filatov's wife and against Anna Filatov, Filatov's daughter; also against Evgueni Filatov, Stanislav's brother. These all benefited directly from the funds that Filatov misappropriated from the Kama Group. I say this because Filatov used the said company funds to pay his wife's and daughter's bills.

40. We are asking the Maltese court to order Mr. Stanislav Filatov to return to the Kama Companies the money he siphoned off from the companies. Likewise, we also request from the Maltese Court to condemn those who received the

Page 6 of 15

Wednesday, 10 April 2002
...NDOWS\Temporary Internet Files\OLK33A4\Final Version Temporary.doc

misappropriated money to return it to the Kama Group. We would like to retain the option of being able to recover the money that was embezzled or misappropriated either from the party who received it (such as Filatov's wife or daughter) or from Filatov himself, being the person who misappropriated it.

### The other Defendants in the Lawsuit

41. The lawsuit is also directed against Vadim Voronine, Stanislav Filatov's nephew who also benefited from the misappropriated funds. Mr. Voronine was Mr. Stanislav Filatov's right hand man. On the 1st January (or thereabouts) 1996 Mr. Vadim Voronine was appointed as executive director of Kama Malta Shipping Co. Ltd. today named Eridan Shipping Co Ltd., one of the plaintiff companies. Eventually, when the financial status of the Kama Group became critical because of lack of funds, he had resigned. He was totally unfit to act as an executive director of a shipping company having no knowledge of English nor any knowledge nor experience whatsoever in shipping or foreign trade. However, he was following without hesitation the orders of Mr. Stanislav Filatov and therefore was used by Mr. Stanislav Filatov to carry out his policy in the Company.

42. The lawsuit in question is also directed against River Sea Management Ltd and E. I. Holdings Ltd. These are companies belonging to Stanislav Filatov. These two companies were once "offshore" companies registered in Malta. It appears that they have been abandoned and where recently forced by the Malta Financial Services Centre to go into forced liquidation. They have lost their "offshore status". This lawsuit has been instituted against these two companies too because they gained unjustly from the misappropriated funds that were unlawfully directed by Mr. Stanislav Filatov from the Kama Group and injected into his two offshore companies.

### Events following the Commencement of the Investigations

43. As explained, Mr. Stanislav Filatov managed to misappropriate funds belonging to the four Kama Group of Companies because up to the beginning of 1997, he was one of the authorized signatory of all bank accounts held by the group.

44. I mentioned above a meeting that I held in Russia with Mr. Mikhail Antonov in August 1997. While I was in Russia, I held other meetings where other high-ranking officials of the majority shareholder were present. These meetings took place between the 10th August, 1997 and the 15th August, 1997. The following persons were present during the various meetings which took place: (i) Mr. Leonid Iougov, the Director General of Kama River Shipping Co., of Perm, (ii) Mr. Boris Apourine, the Deputy Director General of Kama River Shipping Co., and (iii) Mr. Mikhail Antonov – representative of the majority shareholders of Kama River Shipping Co., and (iv) myself. Among others things, the people representing Kama River Shipping Company took the following decisions:

- To withdraw the bareboat chartered ships (Volgodon 5023, Volgodon 5024, Volgodon 5026, Volgodon 5040, Volgodon 5042) from service with River Sea Shipmanagement Ltd. due to the failure of River Sea Shipmanagement Ltd. to pay bareboat hire, maintain the ships and to insure the ships.

- That Mr. Stanislav Filatov to be distracted from the management of the Kama Group of Companies and the ships.

- That the undersigned be appointed as a manager in Rifey 5040 Shipping Co. Ltd and this company is entrusted the operation of the ships of Kama Group.

45. Furthermore, on the 03rd or thereabouts of September 1997, Mr. Mikhail Antonov being afraid that Mr. Stanislav Filatov may make a final attempt to embezzle funds belonging to the Kama Group instructed me to transfer all money belonging to the group of companies to bank accounts in which Mr. Stanislav Filatov and Mr. Vadim Voronine had no right of signature.

46. In early September 1997, Mr. Stanislav Filatov revoked my work permit in Malta. I arranged a new Maltese work permit from Antarus Shipping Co. Ltd.

47. Between the 18th and 21st November 1997, I visited again the majority shareholder or Mother Company, Kama River Shipping Company in Perm, in the Russian Federation. Kama River Shipping Company decided that the Kama Group is to leave Malta and move the operations of its ships to Istanbul. It was at this stage that Mr. Stanislav Filatov started a campaign against me alleging that I stole certain personal belongings from him or from his brother Eugeni Filatov. Upon my return from Russia I was questioned by the police in Malta and released. I knew that Mr. Stanislav Filatov was trying to use the police to force me to leave Malta and leave him space for action. I did not know what exactly his plans were at that time but I felt that my presence in Malta was making it impossible for him to materialize certain plans. Later on I understood that he had plans for embezzling the insurance proceeds for the lost vessel m/v Anna John owned by Kama II Shipping Co. Ltd. and insured with Black Sea and Baltic Insurance Co (London), as I will explain further on in my affidavit.

48. On the 8th of December 1997, following the decision for relocation to Istanbul, I left Malta and we stopped operating from Malta. I went to Istanbul, Turkey, with instructions to tend to the setting up, incorporation and registration there of a company representing Kama River Shipping., of Perm, Russia in Turkey.

49. Since then, we have continued to operate from Istanbul, where we have set up offices there. To date I continue to be based in Istanbul.

The formal dismissal of Stanislav Filatov from the Kama Group of Companies.

50. By January 1998, it had become very evident that Mr. Stanislav Filatov had during his term of office actually managed to misappropriate and embezzle substantial amounts of money from the Kama Group of Companies. At this stage Kama River Shipping Co., the majority shareholder of the Kama Group of Companies, decided to officially remove Mr. Stanislav Filatov from all positions taken by him in the group of companies. Joint meetings of the directors and shareholders of the four Maltese companies that formed part of the group were held in Perm, Russia, to implement the decision taken and to authorize legal action against Mr. Stanislav Filatov to claim back from the latter the money belonging to the Kama Group of Companies which had been embezzled and misappropriated by Mr. Stanislav Filatov. The minutes of the companies depict the detail of the discussions held. Certified true copies of the minutes which were

notarized and also legalized by apostille, are being herewith attached together with an official translation of same and these are being marked, as one bundle of documents, as "EVIDENCE Nr. 1"

51. In March 1998 the procedure for the removal of Stanislav Filatov from the management of the group of companies was completed.

52. I will now start specifying and quantifying our claim against Mr. Stanislav Filatov.

Capes Shipping Co. Inc. of the USA

53. Perhaps the most simple and straightforward claim we have against Mr. Stanislav Filatov regards the unauthorized transfer of company funds by Filatov to a company called Capes Shipping Co. Inc. based in the USA.

54. On the 2nd of September, 1997, Mr. Stanislav Filatov made an unauthorized transfer of $11,000 from the account of Antarus Shipping Co. Ltd. to the said company Capes Shipping Co. Inc.[4] That is why this company features as one of the defendants. Antarus Shipping Co. Ltd is one of the plaintiffs in the lawsuit mentioned above.

55. Our lawyers in Malta, Prof. J. Ganado & Associates, wrote to this company on behalf of Antarus Shipping Co. Ltd but received no reply or feedback whatsoever from the American company. A copy of their letter is attached to the writ of summons. No reply whatsoever was received - not even an acknowledgement or a rebuttal of the claim made in the letter.

56. As already explained, Mr. Stanislav Filatov had control of the funds of, inter alia, Antarus Shipping Co. Ltd. (hereinafter Antarus) and could, therefore, make such an unauthorized transfer of funds. We have no idea why Mr. Stanislav Filatov transferred this sum of money to Capes. What we are certain of is that Antarus had absolutely no business dealings with Capes Shipping Services Inc. and that Stanislav Filatov was using their offices in U.S.A. We tried to trace for information but there was none available. I know that Antarus had no business dealings with Capes because I did all operations work for this company and because Capes was (and still is) a shipping company doing agency services in the USA where none of the ships of the Kama Group would ever be able to sail due to their class restrictions.

57. Proof that the transfer was made out of the bank account of Antarus to the benefit of Capes is evident from the document annexed to this affidavit marked "EVIDENCE 2".

58. So plaintiff company Antarus is claiming back the sum of USA$11,000 from defendants Capes and/or Filatov for the reasons explained above.

---

[4] Hereinafter referred to as "Capes".

*Wednesday, 10 April 2002*
*C:\WINDOWS\Temporary Internet Files\OLK33A4\Final Version Temporary.doc*

Page 9 of 15

### The saga of the vessel m/v Volgodon 5064

59. In November 1995 m/v Volgodon 5064 owned by Kama River Shipping grounded at Istanbul Roads and was, subsequently, declared a total loss.

60. On the 4th of January, 1996 the insurance company of m/v Volgodon 5064 paid the compensation for the lost ship. This amounted to $1,000,00 (USA dollars one million) and was paid into to the bank account of Kama Malta Shipping Company Limited held with Hambros Bank in London. (in 1997 Hambros bank Ltd was acquired by Societe Generale)

61. Mr. Stanislav Filatov misappropriated the insurance compensation of m/v Volgodon 5064. He did this by effecting a number of transfers out of the bank account of Kama Malta Shipping Company Limited, where, as I have just explained, the ship's underwriters had transferred the money. Mr. Stanislav Filatov transferred amounts of money out of the bank account of Kama Shipping Company Limited to the companies (i) River Sea Shipmanagement Ltd and to (ii) E.I. Holdings Limited and to (iii) his own bank accounts.

62. The evidence that I am presenting to the court as proof of what I am saying consists of:

    (i) The bank statement issued by Hambros Bank PLC indicating all transfers of funds that took place from 29.12.95 to the 09.08.96, and
    (ii) The credit and debit advice notes of Hambros Bank PLC issued for transactions which we maintain have been fictitiously created by Mr. Filatov for the purpose of his misappropriation and embezzlement of money belonging to Kama Malta Shipping Company Limited (which today has changed name and is called Antarus Shipping Limited, as I pointed out above).

63. The above mentioned bank statement, as well as the credit and debit notes are all collected in a folder named "EVIDENCE 3" that I am attaching to this declaration.

64. I want to take this opportunity to make some observations. After checking the statement of accounts of Hambros Bank Plc (evidence 3.1.) and the corresponding credit and debit advices of the account of Kama Malta Shipping Company Limited held with Hambros Bank Plc (collected in "EVIDENCE 3.2", we established the following facts:

    i. On the 4th of January, 1996, the insurance company of m/v Volgodon 5064 paid USA$1,000,000 into the bank account of Kama Malta Shipping Company Limited held with Hambros Bank Limited (London). This was evidenced by credit advice reference: 86/865566/22 (see evidence 3.2.1.).

    ii. On the 15th of January, 1996 Stanislav Filatov transferred to River-Sea Shipmanagement Limited's account held with Bank of Valletta

International Ltd the sum of USA$62,265 under the reference 'invoice 8.1.96'. (evidence 3.2.2)

iii. On 16 of April 1996, Mr. S. Filatov transferred under the reference 'Settlement of Kama Shipping Expenses' the sum of USA$166,620 to the bank account of the Defendant Company E.I. Holdings Limited held with Bank of Valletta International Ltd (evidence 3.2.3). The Kama Group of Companies and Kama River Shipping had no dealings whatsoever with E.I. Holdings Limited and, therefore, this payment as well as all the others I have mentioned here were theft.

iv. On the 23rd of April, 1996, Mr. Stanislav Filatov transferred the sum of USA$48,000 to his own account held with Bank of Valletta International Ltd under the heading 'Management fees'. (evidence 3.2.4.)

v. On the 9th of May, 1996 Mr. S. Filatov transferred again from the account of Kama Malta Shipping to the account of E.I. Holdings in Bank of Valletta USA$48,131 under the common heading 'Kama Shipping expenses'. (evidence 3.2.5.)

vi. On the 17 of May, 1996 Mr. Stanislav Filatov transferred to the bank account of J & M Parnis England held with Hill Samuel Bank Jersey Limited the sum of USA$32,000 under the reference 'settlement of consultancy fees'. (evidence 3.2.6.). No agreement with J & M Parnis England for any consultancy services existed.

vii. On the 20th May, 1996 Mr. Stanislav Filatov transferred again to bank account of E.I. Holdings Ltd, but this time held with Mid-Med Bank Limited (Malta) the sum of USA$290,000 under the reference 'settl. of agreement 190496'. (evidence 3.2.7) No such agreement existed. No services whatsoever had been rendered by EI Holdings Ltd to Kama Malta Shipping.

viii. On 20.05.96 Mr. Filatov transferred to account of River-Sea Shipmanagement Limited USA$310,000 under his favorite heading 'settl of agreement 190496'. (evidence 3.2.8.)

ix. On 18.07.96 Mr. Filatov transferred $ 25000 to the account of E.I. Holdings Limited held with Bank of Valletta International Ltd (Malta) under the common reference 'in settlement of Kama Shipping expenses'. (evidence 3.2.9.)

x. On 30.07.96 Filatov again transferred to EI Holding and again under the same reference (settl. of Kama Shipping expenses), but this time USA$62,000. (evidence 3.2.10)

65. All these transactions that I have highlighted were done without the knowledge, authorization and approval of either the Board or the shareholders of Kama Malta Shipping Company Limited or of the parent company in Perm, Russia (Kama River Shipping Company) and where done against the interests of the company.

10 APR 2002

66. For ease of reference, I drew up the following table which depicts the above explained insistences of misappropriation. The sum total is the amount being claimed by plaintiffs in the relative lawsuit:

| Nr | Date | Description | Amount ($) |
|---|---|---|---|
| 1 | 15.01.96 | Transfer to River-Sea Shipmanagement Ltd | 62265 |
| 2 | 16.04.96 | Transfer to EI Holdings Ltd | 166260 |
| 3 | 23.04.96 | Transfer to personal account of Filatov | 48000 |
| 4 | 09.05.96 | Transfer to EI Holdings Ltd | 48131 |
| 5 | 17.05.96 | Transfer to J and M Parnis England | 32000 |
| 6 | 20.05.96 | Transfer to EI Holdings Ltd | 290000 |
| 7 | 20.05.96 | Transfer to River-Sea Ltd | 310000 |
| 9 | 18.07.96 | Transfer to EI Holdings Ltd | 25000 |
| 10 | 30.07.96 | Transfer to EI Holdings Ltd | 62000 |
|   |   | Total | 1043656 |

67. As can be noted from the above, in 1996, within just 8 months, Mr. Filatov managed to misappropriate the total sum of USA$ 1043656 from the account of Kama Malta Shipping Co. Ltd. held with Hambros Bank Ltd.

68. To sum up and conclude, therefore, in total, for the time being our claim against Stanislav Filatov, Capes, EI Holdings Ltd and River-Sea Shipmanagement Ltd is USA$ 1043656 + USA$ 11,000 = USA$ 1054656

69. In reaching this figure I have taken into account the above-mentioned unauthorized transactions carried out by Mr. Filatov. I have excluded from my table various other transactions or transfers carried out by Mr. Filatov even though I am aware that they were unauthorized. I have limited plaintiff's claim within the scope of the above cases of misappropriation in order to minimize court expenses. Unfortunately, we have managed to trace a few assets belonging to Mr. Stanislav Filatov and the other defendants in the lawsuit. Therefore, increasing our claim will only serve to increase plaintiff's court expenses with no benefit to the company once the prospects of eventual successful enforcement upon assets belonging to Mr. Stanislav Filatov and the other defendants are minimal. Consequently, it will not make economical sense for me to raise plaintiff's claim beyond the indicated amount. For this reason, I am for the time being restricting my affidavit to the above amount.

70. I reserve and retain unprejudiced plaintiff's right to bring, at any later stage in these same proceedings, further evidence against Mr. Stanislav Filatov or the other defendants, in order to increase our claim further even though excluded from the present affidavit.

71. I also want to emphasize that plaintiffs reserve their right to institute afresh judicial proceedings against any of the defendants claiming any sums of money misappropriated by Mr. Stanislav Filatov which are not referred to included in the above table.

72. The evidence that I am attaching to this affidavit depicting the above mentioned unlawful transactions of Mr. S. Filatov and the embezzlement of funds belonging to Kama Group was collected and organized by myself personally over the years. The

representatives of the parent company in Perm, Russia have been kept informed of my findings.

73. The bank slips, advices and statements I obtained in November 1998, after negotiations with Hambros Bank Ltd (now Societe Generale) in London. The Bank allowed me to collect a copy of the statement of accounts of the plaintiff companies Kama II Shipping Co. Ltd and Kama Malta Shipping Co. Ltd. (today named Eridan Shipping Ltd) for the purpose of carrying out my investigations. As there were thousands of transactions, Hambros Bank refused to give me copies of all credit and debit advices recording the money movements. We agreed with Hambros Bank (Societe Generale) that they would give me maximum about 100 pages of credit and debit advices. I, therefore, decided to request from the bank documents which depicted payments exceeding USA$25,000. From the documents submitted to me by Hambros Bank (Societe Generale) I managed to track and identify the unauthorized transfers of funds effected by Filatov and to determine the amount of money misappropriated.

74. Unfortunately none of the Kama Companies kept proper financial records and accounts. Therefore, it was very tedious for me to determine what exactly had happened with the funds of the group during the years. The information given to me by Hambros Bank Ltd (Societe Generale) in London revealed what Mr. Filatov had been doing over the years. From the bank statements we discovered that Mr. Stanislav Filatov had, between the period between the period 22.04.1994 to the 04.10.1996, transferred to his companies River Sea Shipmanagement Ltd and EI Holdings Limited large sums of money. When ordering the bank to effect the transfers of money from Kama Malta Shipping Co. Ltd. to River Sea Shipmanagement Ltd. and E.I. Holdings Ltd. and River-Sea Ltd., Mr. Filatov used the guise of vague terms such as "bunker supplies", "cash to master", "disbursements accounts", "spares supplies", "management fees" etc.

75. There were various other misdeeds conducted by Mr. Filatov. To mention a few:

   i. Mr. Filatov secretly collected for himself tremendous amounts of money under the pretext of "management fees". He did this without the knowledge of the board and the shareholders of the Kama Group.

   ii. Mr. Stanislav Filatov paid to Mr. Stephen Parnis England, Egymalta Shipping and Mid-Med Maritime tremendous management fees and consultancy fees embezzling the funds of the Kama companies.

   iii. Mr. Filatov had the habit of paying the expenses of the vessels in bareboat charter with River-Sea Shipmanagement Ltd (Volgodon 5023, Volgodon 5024, Volgodon 5026, Volgodon 5040, Volgodon 5042) from the bank account of Kama Malta Shipping Co. Ltd. The expenses of the vessels should have been paid by River-Sea Shipmanagement Ltd., Filatov's company, because they were on bare-boat charter to River Sea Shipmanagement Ltd, and River Sea Shipmanagement Ltd was collecting all income from the operation of the ships in its capacity of a disponent owner.

76. Mr. Stanislav Filatov destroyed the main part of the archive of the group companies in September 1997. Therefore, it is practically impossible to recover all evidence showing the fraud, embezzlement and misappropriation of funds

committed by Mr. Filatov. The evidence that we managed to collect gives us the confidence to allege that practically all expenses of Stanislav Filatov, his family and his companies River Sea Shipmanagement Ltd, EI Holdings Ltd and River-Sea Ltd were for account of the Kama Group of Companies. The most striking expenses are the hotel expenses for the guests of Stanislav Filatov, the purchase in leasing of two Peugeot 205 cars, the purchase of the motor yacht Manda, and continuous payment of police fines for traffic sitting of Stanislav Filatov and his wife Irina Filatova.

77. Unfortunately, for the reasons explained above, at this point in time, in view of the fact that few assets belonging to Filatov have been traced, it does not make economical sense to go into all these other instances of misappropriation etc. We, therefore, are constrained to limit our claim to the 2 instances mentioned above, namely that relating to Capes Shipping and that relating to the m/v Volgodon 5064.

Signed: _____
Mr Todor H. Vassilev

CERTIFIED TRUE SIGNATURE
10 APR 2002

The following documents are attached to my affidavit:

I. Folder "EVIDENCE 1" (
1. Notice of a meeting of the board of directors of Antarus shipping dd. 17.03.98
2. Minutes of the meeting of the board of directors of Antarus Shipping dd. 25.03.98
3. Notice of an extraordinary general meeting of the shareholders of Antarus Shipping Co. Ltd dd. 27.03.98
4. Minutes of the extraordinary general meeting of the shareholders of Antarus Shipping Co. Ltd. dd. 15.04.98
5. Notice of a meeting of the board of directors of Kama II Shipping dd. 17.03.98
6. Minutes of the meeting of the board of directors of Kama II Shipping dd. 25.03.98
7. Notice of an extraordinary general meeting of the shareholders of Kama II Shipping dd. 27.03.98
8. Minutes of the extraordinary general meeting of the shareholders of Kama II Shipping dd. 15.04.98
9. Notice of a meeting of the board of directors of Eridan Shipping dd. 17.03.98
10. Notice of a resolution of Eridan Shipping to remove a director dd. 25.03.98.
11. Minutes of the meeting of the board of directors of Eridan Shipping dd. 25.03.98
12. Notice of an extraordinary general meeting of the shareholders of Eridan Shipping dd. 27.03.98
13. Minutes of the extraordinary general meeting of the shareholders of Eridan Shipping dd. 15.04.98
14. Notice of a meeting of the board of directors of Ferrum Shipping dd. 17.03.98
15. Minutes of the meeting of the board of directors of Ferrum Shipping dd. 25.03.98
16. Notice of an extraordinary general meeting of the shareholders of Ferrum Shipping dd. 27.03.98
17. Minutes of the extraordinary general meeting of the shareholders of Ferrum Shipping dd. 15.04.98

II. Folder "EVIDENCE 2" (Transfer of USA $$ 11000 to capes Shipping (USA)
1. A letter of Mid-Med bank Ltd dd. 03.09.97, signed by A. Muscat
2. Payment order dd. 09.04.97 signed by Mr. Stanislav Filatov
3. Swift slip of Mid-Med Bank Ltd by which payment of USA $ 11000 was effected to Capes Shipping

10 APR 2002

III. Folder "EVIDENCE 3"
1. Subfolder "EVIDENCE 3.1"
1.1. Statement of accounts Hambros Bank – Kama Malta Shipping, account F76-409-01 for the period 29.12.95 – 09.08.96
2. Subfolder "EVIDENCE 3.2" (Credit and debit advices of Hambros Bank)
2.1. Credit advice 86/865566/22 – USA $ 1.000.000 – payment of insurance company of m/v Volgodon 5064 for the lost vessel
2.2. Debit advice 79/7959/22c/n – UAS $ 62265 – payment to River-Sea Ltd
2.3. Debit advice m1060395 – USA $ 166620 – payment to E I Holdings Ltd
2.4. Debit advice m1140016 – USA $ 48000 – payment to Mr. Stanislav Filatov
2.5. Debit advice m1290538 – USA $ 48131 – payment to E I Holdings Ltd
2.6. Debit advice m1380047 – USA $ 32000 – payment to J and M Parnis England
2.7. Debit advice m1410068 – USA $ 290000 – payment to E I Holdings Ltd
2.8. Debit advice m1410057 – USA $ 310000 – payment to River-Sea Ltd
2.9. Debit advice m2000338 – USA $ 25000 – payment to EI Holdings ltd
2.10. Debit advice m2120275 – USA $ 62000 – payment to EI Holdings ltd

10 APR 2002

Oguz Teoman
Hon. Consul General

Exhibits To
Vassilev Affidavit of April 10, 2002
Are In Accompanying
Separately Bound Volume