App. Civ. Nru:  1116/94

# QORTI TA' L-APPELL

## IMHALLFIN

**S.T.O. JOSEPH SAID PULLICINO B.A.,(HONS.), LL.D. –
PRESIDENT
ONOR. CARMEL A. AGIUS B.A., LL.D.
ONOR. JOSEPH D. CAMILLERI B.A., LL.D.**

**Seduta ta' nhar it-Tnejn, 14 ta' Jannar, 2002**

**Numru 6**

**Citaz. numru: 1116/94**

> **L-Avukat Dottor Kevin F.
> Dingli fil-kwalita' tieghu
> bhala mandatarju specjali
> ta' l-assenti Konstantinos
> Kostopoulos**
>
> **vs**
>
> 1.   **L-Avukat        Dottor
>      Joseph Bonnici u l-
>      P.L. Hilda Ellul Mercer
>      li b'digriet tat-18 ta'
>      Awissu     1994    gew
>      nominati       kuraturi
>      deputati        sabiex
>      jirrapprezentaw     lill-
>      assenti Stylianos sive
>      Styl Prokidis**
> 2.   **Ir-Registratur    tas-
>      Socjetajiet
>      Kummercjali**

I

App. Civ. Nru: 1116/94

**Il-Qorti,**

**Is-Sentenza appellata**

Fit-30 ta' Mejju 1995 l-allura Qorti tal-Kummerc ippronunzjat is-segwenti sentenza fil-kawza fl-ismijiet fuq premessi li kienet tkopri decizjoni kemm fuq diversi eccezzjonijiet preliminari sollevati mill-konvenuti kif ukoll decizjoni fil-meritu.

"Il-Qorti,

Din il-kawza bdiet b'citazzjoni pprezentata fit-3 ta' Awissu 1994, fejn l-Avukat Dottor Kevin Dingli ghan-nom ta' l-assenti Kostantinos harrek lir-Registratur tas-Socjetajiet Kummercjali u lill-kuraturi biex jirrapprezentaw lill-assenti Stylianos sive Styl Prokidis li fit-18 ta' Awissu 1994, gew nominati biex jirrapprezentawh f'din il-kapacita' ta' kuraturi l-Avukat Dottor Joseph Bonnici u I-P.L. Hilda Ellul Mercer;

Fic-citazzjoni w id-dikjarazzjoni gguramentata tieghu, jghid li l-partijiet proprji, huma diretturi tas-Socjeta' Glovegold Shipping Limited - socjeta' kostitwita f'Malta fl-10 ta' Mejju 1989, u hawn registrata bin-numru C 10616. Din is-socjeta' hija proprietarja tal-bastiment merkantili M.V. 'ANTHENOR EXPRESS'.

L-azzjonista principali f'din is-socjeta' hija s-socjeta' Ingliza Glovegold Limited, li da parti taghha hija l-proprieta' tas-socjeta' ohra Ingliza Corporation Link Ocean Carriers (UK) Limited, f'liema socjeta' l-kontendenti proprji huma azzjonisti f'sehem indaqs.

Il-konvenut Prokidis isostni l-attur nomine, gie misjub hati diversi drabi mill-Qrati Kriminali kompetenti Griegi, ta'

2

App. Civ. Nru:  1116/94

diversi reati ta' frodi kolha jipprecedu d-data tar-registrazzjoni f'Malta tas-socjeta' Glovegold Limited.

Ghalhekk skond l-Artikolu 125 (b) ta' l-Ordinanza dwar Socjetajiet Kummercjali (Kapitolu 168), hu ma kienx kwalifikat jinhatar direttur u qatt ma kien u ma huwiex hekk kwalifikat.

TALAB biex il-Qorti tiddikjara dan retroattivament b'effett mill-10 ta' Mejju 1989 u tinibixxi lill-konvenut jew persuna mqabbda minnu li b'xi mod jezercitaw il-poteri vestiti fil-kariga ta' Direttur naxxenti mil-ligi jew mill-istatut tal-istess socjeta' u li jigu wkoll inibiti milli b'xi mod jirrapprezentaw lill-istess socjeta'.

L-attur talab kontra l-konvenut Registratur tas-Socjetajiet Kummercjali, li dan jirregistra l-iskwalifika w it-tnehhija tal-konvenut u jippubblika tali skwalifika fil-Gazzetta tal-Gvern ghall-informazzjoni tal-pubbliku in generali.

Huwa utili li l-Artikolu li fuqu qed tigi bbazata dina l-azzjoni tigi kkwotata f'dan l-istadju.  Kif intqal dan huwa l-Artikolu 125 tal-Kapitolu 168 li hekk ighid:

> "Persuna ma tkunx kwalifikata li tinhatar jew ikollha l-kariga ta' Direttur ta' Kumpanija, jekk ...... omissis ...... (b) tkun instabet hatja ta' xi wahda mir-reati li jirrigwardaw il-fiducja pubblika jew serq jew frodi jew irricettazzjoni ta' proprieta' miksuba b'serq jew bi frodi li ssir xjenzament."

Huwa jesebixxi diversi dokumenti mad-dikjarazzjoni guramentata tieghu, fosthom kopji tas-sentenzi tal-Qrati ta' Pireaus tradotti bl-Ingliz u l-opinjoni legali ta' zewg avukati Griegi, dwar in-natura w is-sinifikat legali ta' dawn is-sentenzi.

Jirrizulta wkoll mid-dokumentazzjoni socjali, illi l-konvenut sar direttur ta' din is-socjeta' fit-3 ta' Lulju 1989, u dana wara laqgha generali ta' l-istess socjeta' mizmuma f'din id-data u li ma kienx direttur, meta l-kumpanija giet kostitwita.

Il-Qorti ezaminat dawn is-sentenzi;

3

App. Civ. Nru:  1116/94

Dik tal-Qorti ta' Piraeus tal-Prim'Istanza tal-5 ta' Frar 1979, fejn ma' ko-akkuzati ohra u fl-assenza tieghu, il-konvenut gie akkuzat talli ma hallasx is-salarji ta' l-impjegati li huma kellhom fil-vapur 'HOMER T' u gie kundannat ghal tlett xhur habs u multa ta' 40,000 drachmas.

(b)      Wkoll tal-Qorti ta' Piraeus tal-Prim'Istanza tas-26 ta' Settembru 1990, fejn rega' instab hati li ma hallasx Kaptan ta' vapur u gie kkundannat tlett xhur habs (mibdula f'multa pekunjarja) u 50,000 drachmas.

Din is-sentenza wkoll kienet "by default" ghax l-imputat ma deherx.

L-attur jesebixxi a fol. 39 certifikat li l-konvenut ma appellax minn din is-sentenza.  Dana c-certifikat pero' jaghmel riferenza ghall-kaz 13654/80 mentri l-kaz kwotat huwa 13656.

(c)      Fil-Qorti tal-Magistrati ta' Piraeus fl-14 ta' Mejju 1981, fejn mat-tnejn min nies ohra, gie akkuzat ghall-falliment frawdulenti.   Il-konvenut Prokidis rega' ma deherx u minkejja li jirrizulta li l-imputat Baglatzis kien principalment responsabbli ghar-reat, il-Qorti sabet lill-konvenut *"the accused Stylianos Prokidis being the Director general of the above mentioned enterprise under bankruptcy in common with Mektarios Nakrygiannis as its legal representative, they have deliberately offered their direct assitance to the first one mentioned and in executing the main action."*

U hawn gie kundannat sena habs.

Minn din is-sentenza ma sarx appell u dana skond certifikat a fol. 58.

Sentenza ohra "by default" tal-Qrati tal-Magistrati ta' Piraeus tal-5 ta' Settembru 1985 fejn ma' ohrajn gie kundannat habs u multa ghax naqsu milli jhallsu l-kontribuzzjonijiet tas-sigurta' socjali ta' l-impjegati.  F'dan il-kaz ukoll jidher li s-sehem tieghu kien dirett u mhux rapprezentattiv.   Sas-6 ta' Gunju 1994 minn dina s-sentenza ma kienx hemm appell.  (Certifikat a fol. 74).

4

App. Civ. Nru: 1116/94

Fit-28 ta' Settembru 1994, il-kuraturi deputati taw l-eccezzjonijiet soliti li ma kienux edotti mill-fatti. Sadanittant pero' l-Qorti laqghat it-talba ta' l-Avukat Dr. Louis Cassar Pullicino biex jassumi l-atti tal-kawza ghan-nom tal-konvenut bhala mandatarju specjali tieghu w irrevokat id-digriet taghha ghan-nomina tal-kuraturi *contrario imperio*;

Fl-eccezzjonijiet tieghu ulterjuri u fid-dikjarazzjoni guramentata l-konvenut nomine jqajjem il-punti legali u fattwali segwenti:

1.    In-nuqqas ta' gurisdizzjoni ta' dina l-Qorti, billi ma japplikawx ebda wahda mis-sub-incizi ta' l-Artikolu 742 tal-Kap. 12;

2.    L-azzjoni *de quo* tispetta lis-socjeta' Glovegold Shipping Limited u l-attur di proprio u bhala direttur ta' l-istess socjeta' ghalhekk ma ghandux l-interess guridiku mehtieg.

3.    Illi qabel ma jigi nvokat l-Artikolu 125 Kapitolu 168, l-attur imissu pproceda separatament ghal dikjarazzjoni li s-sentenzi minnu kkwotati huma esegwibbli f'Malta.

4.    Is-sentenzi tal-Qrati Griegi huma nulli ghax gew moghtija *in absentia*, il-konvenut ma kienx validament notifikat, ma ghandhomx validita' skond il-ligi Griega, ma jissodisfawx ir-rekwiziti ta' l-Artikli 826 u 827 Kapitolu 12, u gew moghtija bi vjolazzjoni tal-Konvenzjoni Ewropea Dwar id-Drittijiet Fondamentali tal-Bniedem, liema konvenzjoni tifforma parti mil-ligi domestika kemm ta' Malta u tal-Grecja.

5.    In ogni caso s-sentenza ta' din il-Qorti ma jistax ikollha effett retroattiv.

6.    U finalment is-sentenzi in kwistjoni ma jikkostitwiex kundanna rigward fiducja pubblika, serq jew frodi, skond l-ordni pubbliku Malti.

Fis-seduta tal-4 ta' Novembru 1994, l-avukati rispettivi qablu, illi din il-kawza tista' tinstema' ma kawza ohra fl-ismijiet inversi, u cioe' Nru. 1429/94 NA.

5

App. Civ. Nru: 1116/94

B'nota tad-9 ta' Novembru 1994 l-attur esebixxa kopji ta' diversi sentenzi ohra, tradotti, din id-darba pero' tal-Qorti ta' Ateni.

(a)     Fejn fuq appell tal-konvenut fis-6 ta' Gunju 1977, gie misjub hati fuq *violation of the law on cheques* u kkundannat b'prigunerija.

(b)     Mill-Qorti tal-Prim'Istanza wkoll fuq *cheque* mhux onorat, u gie kundannat ghal ghaxar xhur prigunerija u multa ta' 80,00 drachma u dan fit-30 ta' Jannar 1979.

(c)     Ghall-istess akkuza fis-26 ta' Jannar 1979, fejn gie kundannat tlett snin habs u multa.

(d)     Ukoll fil-31 ta' Mejju 1979 ghal *cheque* li ma kienx gie kopert minn fondi necessarji.

Huwa ta' min josserva illi f'dawn il-kazijiet minkejja l-assenza tal-konvenut, gew prodotti xhieda u provi dokumentari.

U dan kien ukoll il-kaz li f'sentenza tat-28 ta' Ottubru 1976 u (d) b'sentenza ohra tas-26 ta' Jannar 1979 u dana apparti mis-sentenza (c) fuq imsemmija.

Is-sentenzi tat-2 ta' Gunju, 13 ta' Frar u 11 ta' April 1979 isegwu nuqqasijiet fuq hlas lill-impjegati, mentri dik tal-20 ta' Mejju 1981 hija fuq ksur tal-Exchange Control Regulations tal-Grecja.

Ma jirrizulta ebda appell minn dawn is-sentenzi.

Fit-22 ta' Novembru 1974 gie registrat dan il-verbal "*Il-partijiet jaqblu illi minkejja li l-urgenza giet milqugha fic-citazzjoni numru 1421/94NA u f'din il-kawza inghata digriet li z-zewg kawzi, cioe', numru 1421/94NA u dik numru 1116/94NA ghandhom jinstemghu kontestwalment, il-kawza ta' fuq il-mertu, li minnha jiddependi l-ezitu taz-zewg kawzi hija dik numru 1116/94NA li fiha ghandhom jinstemghu l-provi.*"

Fl-istess seduta apparti milli l-Avukati Dr. Joseph Bonnici u Dr. Tonio Mark, xehed l-attur Konstantinos Kostopoulos.

6

App. Civ. Nru: 1116/94

Jghid li kien qieghed jinnegozja ma' Bank Grieg ghall-finanzi biex jixtri vapur iehor, meta "*In the course of the conversation I informed him that I was not the only partner, but that Mr. Prokidis was a partner with me.*"

"*After I had given him all the information and it seemed as if everything was going to be allright, for no apparent reason, the Bank stopped negotiating with me and the manager even stopped speaking to me on the phone.*"

"*I enquired as to why the Bank should have changed their attitude completely and after some time, I discovered that the Bank had a file on Mr. Prokidis and in this file it was evident that from a time before we started our Corporation, Mr. Prokidis had not honoured a certain amount of his liabilities.*"

"*This is the first time that I discovered about Mr. Prokidis past, and obviously it meant that I could not continue co-operating with him in business.*"

"*I discussed this information approximately in June of 1993. At about the same period I met Mr. Prokidis in London.*"

"*Mr. Prokidis accepted what I told him as being correct. After I mentioned this situation to Mr. Prokidis, his behaviour became very bad. He started accusing me of certain things, in coming to the office, and behaving in an ungentle manner.*"

"*The Bank because of their confidentiality did not give me precise information with regard to Mr. Prokidis, but I understood that he was a "persona non grata" and that they would not deal with me as long as I was in partnership with him.*"

Jixhed permezz ta' affidavit mehud fil-High Commission Maltija go Londra, l-konvenut Prokidis fis-17 ta' Novembru 1994.

"*Jilmenta li ma giex notifikat bil-proceduri odjerni.*"

7

App. Civ. Nru: 1116/94

Din hija haga li zgur ma kkagunatlu ebda pregudizzju, minkejja li seta' gie ppregudikat li ma kienx notifikat bi proceduri fi Grecja.

Fl-affidavit tieghu jghid li telaq mill-Grecja fl-1987 u ma kienx jaf bil-proceduri li saru hemm kontra tieghu u qatt ma kellu residenza fin-numru 129 Filonos Street, gio' Piraeus.

Huwa jaghmel ukoll dikjarazzjoni datata 12 ta' Novembru 1994, bil-kummenti tieghu fuq il-varji sentenzi Griegi u dan a fol. 18 tat-tieni volum.

Huwa ta' min ighid li minkejja li jezistu t-timbri tal-High Commission Maltija ma jidhirx illi din id-dikjarazzjoni hija guramentata.

Apparti minn dan pero' l-kummenti li ghamel hafna minnhom pjuttost korrenti mil-lat tekniku ma jeffettwawx bl-ebda mod is-sustanza w il-meritu ta' hafna mis-sentenzi kkwotati.

Din il-Qorti trid tghid ukoll f'dan l-istadju li hija zgur ma ghandhiex il-kompitu biex tezegwixxi sentenzi kriminali barranin pero' biex semplicement tara jekk dawn humiex prova bizzejjed, li permezz taghhom jista' jinghad li jezistu dawk in-nuqqasijiet kontemplati fl-Artikolu 125 tal-Kapitolu 168.

Mill-fol. 23 sa fol. 105 tat-tieni Volum, huma esebiti fotokopji ta' estratti mill-passaport tal-konvenut, li juru l-assenza tieghu mill-Grecja fil-granet li huwa gie kkundannat mill-Qrati Griegi.

Din l-assenza hija wkoll konfermata minn certifikat mahrug mill-Konsulat Grieg gio l-Ingilterra, bid-data tas-26 ta' Ottubru 1994.

Il-konvenut jesebixxi wkoll affidavit mehud quddiem il-Konslu Malti f'Piraeus tal-Avukat P.J. Yannopoulos.

Din l-opinjoni legali hi principalment wahda teknika fuq is-sentenzi *"which have already been bad and are not executable"*.  U fuq in-notifika li saret fuq il-konvenut f'dawn il-proceduri, dan l-Avukat pero' ghal darba ohra ma jghid xejn fuq il-mertu tal-kundanni.

8

App. Civ. Nru: 1116/94

Kuntrarjament ghal dan u fuq il-meritu l-attur jesebixxi zewg opinjonijiet legali, wiehed mill-ufficcju legali ta' Pologiorgis u ohrajn bhala Dok. "K" a fol. 72 ta' l-ewwel Volum.

> "*The word fraud in the texts means the intention (in Latin "dolus"). The intention of the actor or of the accessory, comprises the offender's knowledge of the material elements of a criminal act, and also the will of the offender that his act shall cause the consequences included in the material elements of the criminal act.*"

Dawn l-Avukati ghandhom il-prattika f'Piraeus.

U jesebixxi wkoll opinjoni ohra bhala Dokument "L" a fol. 73 ta' l-ewwel Volum, mill-grupp legali GRVD, liema grupp jahdem f'Ateni, peress illi jrid jinghad li l-ewwel grupp ta' sentenzi huma mill-Qorti ta' Piraeus, it-tieni grupp mill-Qorti ta' Ateni.

Qed ighidu l-Avukati Griegi, ta' Ateni:

> "*Considering that: (a) in Penal Law the basis element, in order for someone to be convicted, is mainly, the intentional and malicious attitude of such person as against the results of his acts, which is in fact the basis of the accusations against Mr. Prokidis, and (b) perusing relevant judgments issued against Mr. Prokidis, it is established, that the convicted Mr. Prokidis acted in fraud in all cases, and the accusation brought against him, do constitute fraudulent offences according to Greek law.*"

U dana wara li dawn l-Avukati ezaminaw illi skond il-procedura penali Griega, il-konvenut kien gie legalment imharrek.

Dan l-Avukat xehed *viva voce* fis-seduta tal-20 ta' Settembru 1994.

L-aktar punti relevanti tax-xhieda tieghu huma:

1.    li n-notifika kontra l-konvenut saret skond ir-regolamenti tal-ligi Griega;

9

App. Civ. Nru:  1116/94

2.      li mis-sentenzi kollha, il-konvenut kien appella minn sentenza wahda pero' l-konvenut ma kienx deher fl-appell, li gie dezert;

3.      li fil-maggor parti nfatti, hlief probabilment ghal sentenza li minnha kien hemm appell, in-notifika kienet saret permezz ta' proceduri simili ghal dik ta' l-affissjoni fil-ligi taghna, u dana sew meta gie ndikat fl-indirizz, sew meta l-indirizz ma kienx maghruf;  u

4.      li finalment "*these all effect public trust and are connected with fraud.  More specifically a lot of the violations I would say, about half of these instances concern this matters.  And therefore it is not merely a matter of fraud but also a matter of violation of public trust, in so far as it concerns funds against the free circulation of money.  Other crimes concerned violation with regard to non payment of wages in fraud, and I am seeing two judgments concerned the failure to pay social security payments.*

*These later two are also offence public trust.  Since the majority of these cases concern public trust, this is the reason why the state ex officio proceeded itself.*

*One other case concerned fraudulent bunkraptcy, and yet another in violation of Greek Exchange Control Laws.*"

Mill-att ta' provi finalment jezistu l-provi li gab il-konvenut, li jipproduci l-affidavit sew ta' Theofonis Baglatzis li kien ko-akkuzat mieghu, ta' Nikollaos Zoulis, li kien direttur fis-socjeta' in kwistjoni mal-kontendenti, kif ukoll kien Hussain Pal u wkoll ix-xhieda ta' Bemosthenis Constontopoulos li kien impjegat bhala Kaptan mas-socjetajiet li kellu x'jaqsam il-konvenut.  Il-gist ta' din ix-xhieda hi s-segwenti:

1.      Kien Baglatzis u mhux il-konvenut li kien responsabbli ghat-tmexxija tal-kumpanija fil-kumpaniji li kienu nvoluti flimkien;

2.      il-konvenut kien dejjem mexa ta' ragel u kellu karattru onest u integru;  u

10

App. Civ. Nru: 1116/94

3.     L-attur dejjem kien jaf bil-problemi li kellu l-konvenut mal-gustizzja Griega u l-istorja li kien hemm dwar dawn il-problemi.

Ezaminat dawn il-fatti relevanti, wiehed jigi biex japplika dawn il-fatti ghal kaz in ezami.

U dan partikolarment fil-kontest tal-problematika legali li jikkrejaw.

Biex dan isir wiehed irid ihares mhux biss lejn l-eccezzjonijiet tal-konvenut, pero' wkoll jezamina n-nota ta' l-osservazzjonijiet presentati mill-partijiet rispettivi.

L-ewwel eccezzjoni tal-konvenut tirrigwarda n-nuqqas ta' giurisdizzjoni tal-Qrati Maltin a bazi ta' l-Artikolu 742 tal-Kapitolu 12.

Apparti mill-fatt illi, ir-Registratur tas-Socjetajiet Kummercjali huwa wkoll konvenut f'din il-kawza, minkejja wkoll li hu kontumaci, il-Qorti taqbel illi xi kundanna tieghu tista' biss tkun sussidjarja ghal kundanna principali ta' l-ewwel konvenut, u ghalhekk din il-presenza tieghu fil-kawza ma hijiex sufficjenti biex taghti gurisdizzjoni lill-Qrati taghna.

L-Artikolu 742 sub-artikolu 1 tal-Kapitolu 12 hekk jipprovdi:

"*Bla hsara ta' fejn il-ligi tiddisponi espressament xort'ohra, il-Qrati Civili ta' Malta minghajr ebda distinzjoni jew privilegg ghandhom gurisdizzjoni biex jisimghu u jiddeciedu l-kawzi kollha li jirrigwardaw il-persuni hawn taht imsemmija.*"

Fil-kuntest ta' dan l-Artikolu din il-Qorti trid tezamina din il-kawza tirrigwardax xi persuna f'xi wahda mis-sub-incizi ta' l-istess Artikolu 742 sub-artikolu 1.

Huwa minnu li dina l-kawza ghandha bhala zewg kontendenti, zewg persuni li l-ebda wahda minnhom ma hija cittadina Maltija jew domiciljata hawn Malta.

Pero' tirrigwarda b'mod indirett, pero' vitali socjeta' li d-domicilju taghha huwa zgur Malta.

11

App. Civ. Nru: 1116/94

Il-vitalita' tar-rigward huwa konsegwenza li l-azzjoni hija proprju intavolata biex tiddermina kif dina s-socjeta' sejra jkollha hajja, sejra titmexxa, stante illi persuna legali tagixxi biss permezz tad-diretturi li jidderiegi f'isimha.

Illi apparti minn dan, b'interpretazzjoni ftit larga pero' mhiex inammissibbli, li l-assi socjali, infatti l-oqsma ta' l-istess huma "*hwejjeg li qeghdin jew li jistghu jinsabu Malta*" sub-inciz (c) ta' l-Artikolu, u li t-tmexxija ta' persuna legali ma tistax facilment tigi separata mill-entita' taghha nnifisha, liema entita' bir-registrazzjoni taghha hawn Malta tinstab Malta.

Ghal dawn ir-ragunijiet, dina l-eccezzjoni hija michuda.

It-tieni eccezzjoni tal-konvenut hija li l-attur ma setghax de proprio, jistitwixxi din il-kawza ghaliex ma ghandux interess legali.

Tali azzjoni kienet tispetta lis-socjeta'. Fil-kazijiet normali ma hemmx dubbju li l-konvenut ghandu ragun. Hija s-socjeta' tramite l-Bord tad-Diretturi jew semmai, b'decizjoni f'laqgha generali li ghandha tippromwovi azzjonijiet anke kontra Direttur taghha stess.

Dan pero' huwa kaz partikolari. U ma hemmx dubbju illi huwa kaz li jista' jwassal ukoll ghall-hsara diretta lil ko-direttur, fejn hu u ko-direttur iehor biss ghandhom it-tmexxija tas-socjeta' in kwistjoni. Din il-potenzjalita', ta' hsara diretta, allura taghti d-dritt lill-individwu koncernat biex jaghmel dak kollu possibbli biex jevita li din il-hsara ssir aktar lampanti. F'kaz partikolarment bhal prezenti, fejn kull wiehed mid-diretturi ghandu r-rapprezentanza tas-socjeta' in kwistjoni.

Dawn il-konsiderazzjonijiet iwasslu lill-Qorti biex issaqsi, m'ghandhiex interess guridiku dirett persuna partikolari jekk jirrizulta li ko-direttur ikun instab hati ta' reat ta' frodi?

Il-problema hija awmentata bil-fatt li kif ighid tajjeb l-attur, il-ligi hija siekta fuq il-punt ta' min jista' jippromoni dina l-azzjoni.

12

App. Civ. Nru: 1116/94

B'anologija pero' mal-kazijiet l-ohra, fil-ligi li jitkellmu fuq l-agir tad-diretturi w anke fuq it-tnehhija taghhom, il-Qorti thoss li tista' tasal ghas-soluzzjoni ta' din il-problema.

Hekk l-Artikolu 123 u l-Artikolu 126 sub-artikolu (2) jaghmluha cara li l-azzjoni tispetta lill-kumpanija biss u mhux lil xi individwu.

Dina l-ligi ma tghidux fl-Artikolu 125 u b'hekk il-Qorti tifhem illi kull persuna interessata fis-sens giuridiku tista' tipproponi dina l-azzjoni.

Fil-kaz prezenti, wiehed minn dawn il-persuni huwa zgur l-attur.

Pero' apparti minn dina l-konsiderazzjoni l-attur huwa wkoll "*the ultimate beneficial owner*" tan-nofs l-assi socjali.

Huwa kkonoxxut fid-dottrina li jezistu kazijiet fejn l-azzjonist individwali jista' jipproponi azzjoni personali kontra direttur li huwa, mal-membri l-ohra tal-Bord kollha agent tal-kumpanija, pero' mhux biss personalment u individwalment ghandu nkarigu ta' fiducja li jemani mill-kariga tieghu fiha nnifisha, pero' liema kariga hija wkoll ikkontemplata mil-ligi fid-doveri li kwalunkwe direttur ghandu lejn is-socjeta'

Ghal dawn ir-ragunijiet dina l-eccezzjoni hija wkoll michuda.

Dan il-kuncett ta' fiducja li torbot il-kariga ta' direttur fil-konfront mhux biss tas-socjeta' imma wkoll tal-ko-diretturi, tas-socji w anke fil-konfront tal-komunita' kummercjali twassal lil dina l-Qorti biex tifhem x'seta' kellu f'mohhu l-legislatur b'dan l-Artikolu.

Il-ligi trid li persuni li jkollhom xi wahda mill-inkapacitajiet kontemplati mis-sub-incizi (a) u (b) ta' l-Artikolu 125 ma jkunux kwalifikati li jinhatru jew ikollhom kariga ta' direttur.

U jekk dik il-persuna tkun giet interdetta, inkapacitata jew "*falluta mhux mehlusa*" skond il-ligi ta' pajjiza, allura tista' tipproponi ruhha ghal din il-kariga sakemm il-process

13

App. Civ. Nru: 1116/94

jerga' jsir Malta li ghal diversi ragunijiet u motivi zgur ma jkunx l-aktar forum idejali?

Il-fehma ta' dina l-Qorti hija differenti.

Dawn il-proceduri ghandhom jigu accettati mill-att puwith purament fattwali, meta ovvjament wiehed ma huwiex qieghed jikkontempla l-ezegwibbilita' ta' dawn is-sentenzi skond id-decizjoni ta' dak il-pajjiz li fihom tkun grat jew saret dak ir-reat jew din l-inkapacita'.

Din hija t-tezi attrici li l-konvenut instab hati ta' diversi reati kontra l-fiducja pubblika minn tribunal kompetenti tal-pajjiz fejn gew kommessi dawn ir-reati.

Hu jsostni li dan il-fatt huwa bizzejjed u sufficjenti ghall-applikazzjoni ta' l-Artikolu 125.

It-territorjalita' tal-ligijiet kriminali huwa principju stabbilit fid-dritt internazzjonali.

Minkejja dan din il-Qorti thoss li ghandha tghid li l-proceduri penali li saru fil-Qorti Griega, jipprestaw ruhhom ghall-kritika partikolari specjalment fuq il-mod kif saret in-notifika.

Ezami pero' ta' l-istess sentenzi juru li l-Qorti Griega kellha mhux biss xhieda ta' persuna jew persuni bhala prova izda fil-kaz ta' l-assenji mhux onorati anke prova dokumentarja.

Mir-reati kollha li taghhom instab hati l-istess konvenut, dan ir-reat aktar milli n-nuqqasijiet tieghu l-ohra jwasslu lil din il-Qorti biex taccetta t-tezi attrici, meqjusa wkoll il-fatt illi huwa reat li proprju jista' jwassal biex l-attur ikun koncernat fuq l-agir tal-ko-direttur tieghu.

Huwa reat li anke taht is-sistema penali taghna huwa, f'hafna cirkostanzi konsiderat bhala wiehed ta' frodi.

Fatt rilevanti hafna wkoll ghal din il-kwistjoni, huwa dak li jghid l-attur fin-nota ta' l-osservazzjonijiet tieghu, li minkejja li kellu l-possibilitajiet kollha li dana jghidu l-konvenut qatt ma nnega illi fil-fatt huwa kkommetta dawn ir-reati in kwistjoni.  Id-difiza totali tieghu hija wahda

14

App. Civ. Nru: 1116/94

pjuttost procedurali ta' kif issuccedew l-affarijiet sew qabel il-proceduri penali sew matulhom.

Lanqas il-Qorti ma tista' taqbel ma' l-interpretazzjoni moghtija mill-konvenut lill-Artikolu 628 Kapitolu 12 li jghid:

> "*Huma wkoll ammissibbli bi prova bl-istess mod bhal dokumenti msemmija fl-ahhar artikolu qabel dan* (sottolinear tal-Qorti) *w id-dokumenti msemmija fl-ahhar artikolu jippruvaw dak li jkun fihom sakemm ma jigiex ippruvat il-kuntrarju.*"

Artikolu 627: li ma huwiex il-kaz f'dawn il-proceduri ghax fil-fatt il-kuntrarju ma giex ippruvat u ghalhekk dawn id-dokumenti esebiti mill-attur effettivament jippruvaw dak il fihom.

Jibqa' finalment biex jigi deciz l-ahhar punt u cioe' dak tar-retroattivita'.

Hawnhekk din il-Qorti taqbel ma' dak li jsostni l-istess konvenut, li sentenzi ta' dawn il-Qrati ghandhom jaghmlu stat bejn il-partijiet mill-gurnata tas-sentenza 'l quddiem. Dan huwa aktar ovvju u logiku bhal f'kaz prezenti fejn jistghu jigu lezi mod iehor id-drittijiet tat-terzi jekk dan ma jkunx hekk. Liema terzi b'mod insaput ta' dak kollu li kien qed jigri, setghu anke kkontrattaw ma' l-istess konvenut fil-vesti tieghu ta' direttur tas-socjeta' in kwistjoni.

Ghal dawn ir-ragunijiet:

Din il-Qorti tilqa' l-ewwel talba attrici pero' dan mhux b'mod retroattiv, tilqa' t-tieni talba attrici u tilqa' t-tielet talba attrici u tikkundanna lill-konvenut Registratur tas-Socjetajiet Kummercjali ghall-pubblikazzjoni fil-Gazzetta tal-Gvern fiz-zmien gimgha mil-lum.

Dwar spejjes: Dawk l-ispejjez bejn l-attur u l-konvenut Prokidis minhabba n-natura partikolari tal-kaz ghandhom jithallsu zewg terzi mill-konvenut u terz mill-attur.

Dwar l-ispejjez fil-konfront tal-konvenut l-iehor, ir-Registratur tas-Socjetajiet Kummercjali, waqt li normalment dan ma kienx ikun responsabbli ghall-

15

App. Civ. Nru: 1116/94

ispejjes, minhabba l-kontumaci tieghu huwa responsabbli
ghall-ispejjes kollha tac-citazzjoni fil-konfront tieghu."


## Aggravju


Minn din is-sentenza appella l-Avukat Dottor Louis Cassar
Pullicino nomine b'aggravju li jkopri diversi eccezzjonijiet
minnu sollevati kemm ta' natura procedurali kif ukoll fil-meritu.
Hu jippremetti ghalihom is-segwenti fatti li, fil-fehma tieghu,
irrizultaw pruvati u li kienu l-bazi tal-prezenti istanza.


1.    Il-kontendenti Kostantinos Kostopoulos u Stylianos
Prokidis kienu fid-data li gew istitwiti dawn il-proceduri l-unici
zewg diretturi fis-socjeta' "Glovegold Shipping Ltd.", liema
socjeta' hija l-proprjetarja tal-bastiment m.v. Anthenor
Express li ghandu bandiera Maltija.  L-ebda wiehed mill-
kontendenti ma huwa azzjonista f'din is-socjeta'.  Infatti l-
azzjonisti fis-socjeta' huma "Glovegold Ltd.", <u>socjeta'
registrata Malta</u>, li ghandha 499 ishma filwaqt illi Dottor Tonio
Fenech huwa titolarju tas-sehem l-iehor.  L-azzjonista
principali imbaghad ta' "Glovegold Ltd." hija s-socjeta' l-ohra
<u>registrata l-Ingilterra</u> bl-isem "Corporation Link Ocean Carriers
(UK) Limited" u hija biss f'din l-ahhar socjeta' li l-kontendenti

16

App. Civ. Nru: 1116/94

ghandhom ishma ndaqs u direttament fiha u dana
personalment.

F'dawn l-ahhar xhur inqalghu divergenzi kbar bejn id-diretturi
kontendenti f'dawn il-proceduri. L-attur qieghed jibbaza din il-
kawza fuq sensiela ta' sentenzi moghtija mill-Qrati tal-Grecja
liema sentenzi u proceduri gew kollha mehuda waqt li hu kien
jirrisjedi gewwa l-Ingilterra, b'hekk qatt ma kien regolament
notifikat bl-atti ta' dawk il-proceduri u wisq anqas kien prezenti
ghall-istess proceduri.

Din il-Qorti trattat l-ewwel l-eccezzjoni ta' nuqqas ta'
gurisdizzjoni sollevata mill-appellant nomine u michuda fis-
sentenza appellata. L-Ewwel Qorti infatti rriteniet illi kellha
gurisdizzjoni ghaliex (i) il-vertenza kienet dwar tmexxija ta'
socjeta' Maltija u din taghti lill-Qrati Maltin gurisdizzjoni u
setgha li tiehu konjizzjoni ta' vertenza anke f'sitwazzjoni fejn l-
unici zewg diretturi u kontendenti tal-vertenza ghandhom
nazzjonalita' estera w is-socjeta' Maltija lanqas ma hi citata fil-
gudizzju; u (2) li la darba l-assi socjali u cioe' l-ishma ta' l-
istess socjeta' jinsabu f'Malta l-Qrati Maltin ghandhom
gurisdizzjoni.

App. Civ. Nru:  1116/94

Kienet din l-eccezzjoni li giet l-ewwel ittrattata quddiem din il-
Qorti w il-kawza giet differita ghas-sentenza proprju fuq dan l-
aggravju bl-intendiment li l-appell jibqa' jinstema' fuq aggravji
ohra wara li tigi sorvolata din l-eccezzjoni.


L-appellant jissottometti li l-konsiderazzjoni ta' l-Ewwel Qorti
kienet guridikament inaccettabbli ghaliex l-Ewwel Qorti ma tat
l-ebda spjegazzjoni dwar kif, fil-fehma taghha, "tmexxija ta'
socjeta' Maltija" tinkwadra ruhha fis-sub-incizi ta' l-Artikolu 742
tal-Kapitolu 12 tal-Ligijiet ta' Malta.  Inoltre minn imkien ma
jirrizulta illi din il-vertenza b'xi mod, anke remot, kienet
tikkoncerna l-assi socjali ta' l-imsemmija socjeta' Maltija.
Mhux kontestat illi kemm l-attur kif ukoll il-konvenut
personalment kienu t-tnejn cittadini Griegi, filwaqt il-konvenut
huwa residenti l-Ingilterra, l-attur ighix kemm l-Ingilterra kif
ukoll il-Grecja.  Kien minnu pero' li huma t-tnejn kienu z-zewg
diretturi tas-socjeta' Maltija "Glovegold Shipping Ltd.".  L-
appellant isostni illi kif jidher car mill-Artikolu 742 tal-Kapitolu
12 tal-Ligijiet ta' Malta li l-gurisdizzjoni tal-Qrati kienet
determinata minn persuni li jkunu partijiet in kawza.  F'din il-
kawza l-partijiet huma zewg cittadini esteri, apparti l-inkluzjoni
tar-Registru tas-Socjetajiet.    Dan ta' l-ahhar ma kienx
interessat fil-meritu.  Kien biss parti fil-gudizzju biex ikun jista'

App. Civ. Nru: 1116/94

jaghti effett lis-sentenza favorevoli li setghet taghti l-Qorti f'kaz li ssib favur l-attur fl-ewwel zewg talbiet attrici.    Il-mera presenza tar-Registratur tas-Socjetajiet Kummercjali mehtiega biex taghti effett lill-eventwali sentenza tal-Qrati Maltin wahedha ma kenitx bizzejjed biex teradika l-gurisdizzjoni taghhom.

Din il-Qorti, anke jekk mhux ezattament kif komposta, kellha l-opportunita' illi tanalizza l-Artikolu 742 tal-Kapitolu 12 tal-Ligijiet ta' Malta b'mod partikolari fir-rigward tas-sub-inciz (1) li tieghu jghid illi:    "*Bla hsara ta' fejn il-ligi tiddisponi espressament xort'ohra, l-Qrati Civili ta' Malta minghajr ebda distinzjoni jew privilegg ghandhom gurisdizzjoni biex jisimghu u jiddeciedu l-kawzi kollha li jirrigwardaw il-persuni hawn taht imsemmija.*" Jigi notat illi l-ligi titkellem dwar persuni li jaqghu taht il-gurisdizzjoni tal-Qrati Civili ta' Malta.  Ma titkellimx biss dwar persuni li jistghu jagixxu bhala atturi jew jissejhu bhala konvenuti quddiemha.    Titkellem dwar kawzi li jirrigardaw dawn il-persuni.  Dan allura mhux necessarjament ifisser - ghalkemm generalment u bhala regola hekk hu l-kaz - illi l-oggett u l-meritu tal-kawza jkun dritt kontestat bejn il-kontendenti li finalment il-Qorti trid tiddeciedi lil min minnhom jappartjeni.  Ifisser li l-Qorti hi wkoll kompetenti u ghandha

19

App. Civ. Nru: 1116/94

gurisdizzjoni f'kawzi li fihom il-partijiet ikunu qeghdin jikkontestaw meritu li d-determinazzjoni tieghu, apparti li jiddefinixxi l-interess taghhom fih, ikun ukoll direttament jirrigwarda terza persuna li ma tkunx parti fil-kawza u jista' jaffettwa d-drittijiet taghha. F'dawk il-kazijiet il-Qorti tkun kompetenti tikkunsidra dak il-meritu jekk it-terza persuna tkun cittadina ta' Malta hawn domiciljata, anke li kieku altrimenti ma kienitx tkun kompetenti."

F'dik il-kawza allura din il-Qorti waslet ghall-konkluzzjoni illi kellha gurisdizzjoni li tittratta meritu li kien jirrigwarda l-interessi ta' minuri, cittadina ta' Malta, domiciljata Malta, nonostante li l-genituri taghha kienu t-tnejn persuni li ma kienux cittadini Maltin, ma kienux domiciljati Malta u ma kienux residenti Malta. Bl-istess argument f'din il-kawza li kienet bejn zewg persuni li ma kienux cittadini Maltin u lanqas ma kienu residenti f'Malta, din il-Qorti kellha gurisdizzjoni tikkonsidra l-meritu in kwantu dan kien jirrigwarda persuna Maltija residenti Malta u cioe' socjeta' limitata debitament registrata f'dawn il-Gzejjer. Infatti l-partijiet kienu azzjonisti f'din is-socjeta' "Glovegold Shipping Ltd." u l-meritu jirrigwarda proprju l-kontestazzjoni dwar il-kariga ta' direttur ta' din l-istess socjeta' u li jimpingi direttament allura fuq l-

20

App. Civ. Nru: 1116/94

amministrazzjoni taghha.  Indubbjament allura l-meritu ta' din il-kawza jirrigwarda persuna - anke jekk morali - li zgur toqghod u tirrisjedi f'Malta.

Din il-Qorti ma tarax ghaliex ma ghandhiex tadotta interpretazzjoni ta' din ix-xorta fiz-zmien ta' globalizzazzjoni tal-kummerc u nformazzjoni u mezzi ta' komunikazzjoni.  Kien pero' sa hawn li din il-Qorti estendiet l-interpretazzjoni tradizzjonali ta' l-Artikolu 742 ghax dan kien, fil-fehma taghha, konsentit mid-dicitura tieghu.  Mhux korrett li jinghad kif inghad f'xi gjudikati recenzjuri li din il-Qorti fehmet b'dik l-interpretazzjoni illi l-ligi riedet taghti gurisdizzjoni lill-Qrati Maltin biex jisimghu u jiddeciedu l-kawzi kollha li jirrigwardaw ic-cittadini ta' Malta.  Mhux minnu li riedet tatihom protezzjoni shiha, kienu fejn kienu, anke jekk ma kienux residenti f'Malta u anke jekk ma kienux konvenuti quddiemha, sakemm il-meritu tal-kawza jkun jirrigwarda lilhom sakemm ikunu domiciljati Malta.  Il-gudizzju ta' din il-Qorti kien biss fis-sens illi l-Qrati Maltin kellhom gurisdizzjoni illi jiddeciedu l-kawzi kollha li jirrigwardaw il-persuni msemmija fis-sub-incizi (a) sa (j) ta' l-Artikolu 742 sakemm ikunu jissodisfaw ir-rekwiziti kollha ta' dawk is-sub-incizi anke dawk il-persuni li ma jkunux il-partijiet fil-kawza.  Allura f'dan il-kaz anke jekk il-partijiet fil-

21

App. Civ. Nru: 1116/94

kawza ma jkunux huma stess jikkwalifikaw taht xi wahda minn dawn is-sub-incizi. Dan ifisser illi kawza bejn zewg partijiet li ma jkunux cittadini ta' Malta u ma jkunux domiciljati jew joqghodu Malta li l-meritu taghha jirrigwarda cittadin ta' Malta illi jkun stabilixxa d-domicilju tieghu band'ohra ma tkunx taqa' taht il-gurisdizzjoni tal-Qrati Maltin sakemm naturalment ma tkunx tikkwalifika taht xi sub-inciz iehor mill-Artikolu 742.

Dawn il-precizazzjonijiet kienu mehtiega proprju biex ikun iccarat mhux biss il-hsieb ta' din il-Qorti fil-kawza fl-ismijiet "Raymond Calleja vs l-Avukat Dottor Raymond Pace et nomine" deciza fil-31 ta' Jannar 1996 li ghaliha saret riferenza aktar 'il fuq u li l-konsiderandi taghha, fejn pertinenti, kellhom jitqiesu li saret riferenza ghalihom f'din is-sentenza, imma wkoll biex ma tinghatax interpretazzjoni aktar wiesgha minn dik illi l-legislatur intenda fid-dicitura ta' l-Artikolu taht ezami.

Ghal dawn il-motivi u b'dawn il-precizazzjonijiet din il-Qorti tqis l-appell in kwantu bazat fuq aggravju dwar nuqqas ta' gurisdizzjoni bhala mhux sostenibbli w allura tichdu, spejjez ghall-appellant nomine.

22

App. Civ. Nru: 1116/94

Il-kawza giet differita biex tigi trattata ulterjorment quddiem

Qorti diversament komposta.

Deputat Registratur

rf.

**Sitting held on Monday, 14th January, 2002**

**Number 6**

**Summons Number: 1116/94**

## Advocate Dr. Kevin F. Dingli acting as special mandatary for the absent Konstantinos Kostopoulos

## Vs

1. **Advocate Dr. Joseph Bonnici and L.P. Hilda Ellul Mercer who were nominated deputy curators by means of a decree issued on 18th August 1994 to represent the absent Stylianos sive Styl Prokidis**
2. **The Registrar of Commercial Companies**

### The Court

### The Appealed Judgement

On the 30th May 1995 the Commercial Court gave the following judgement in the case in the names mentioned above. The judgement included a decision on various preliminary defence pleas raised by the defendant and also a decision on the merits.

"The Court,

This case started when a writ of summons was presented on the 3rd August 1994. In this writ of summons on the 18th August 1994, Advocate Dr. Kevin Dingli acting in the name of the absent Kostantinos sued the Registrar of Commercial Partnerships and the curators in representation of the absent Stylianos sive Styl Prokidis. Advocate Dr. Joseph Bonnici and the L.P. Hilda Ellul Mercer were nominated to represent Prokidis in their capacity as curators;

In the writ of summons and his sworn declaration, he states that the parties personally, are directors of the Company Glovegold Shipping Limited – a company constituted in Malta on the 10th May 1989, and registered here with number C 10616. This company is the owner of the M.V. 'ANTHENOR EXPRESS' which is a mercantile vessel.

1

The main shareholder Glovegold Limited, an English company, which is itself owned by another English company called Corporation Link Ocean Carriers (UK) Limited.  The litigants personally are the holders of shares in equal amounts in the latter company.

Plaintiff nomine submits that the defendant Prokidis was found guilty by the Criminal Courts of Greece of various crimes of fraud at a time before the company Glovegold Limited was registered in Malta.

Thus, according to Article 125(b) of the Commercial Partnerships Ordinance (Chapter 168), he was not qualified to be appointed as a director and he was never and is not qualified to be a director.

Plaintiff requested the Court to declare this retroactively with effect from the 10th May 1989 and to stop the defendant or any person appointed by the latter from in any way exercising the powers vested in the post of Director which arise from the law or the statute of the same company and to also stop them from representing the same company.

The plaintiff requested that the defendant Registrar of Commercial Partnerships, registers the disqualification and the removal of the defendant and publishes this disqualification in the Government Gazette so that the general public will be informed.

At this stage it is useful to quote the Article on which this action is being based.  As already stated, this is Article 125 of Chapter 168 which provides that:

*"A person shall not be qualified for appointment or hold office as director of a company if –*

*(a) he is interdicted or incapacitated or is an undischarged bankrupt; or*

*(b) he has been convicted of any crimes affecting public trust or of theft or of fraud or of knowingly receiving property obtained by theft or fraud."*

He exhibits various documents with his sworn declaration, such as copies of judgements given by the Courts of Piraeus which have been translated into English and the legal opinion of two Greek lawyers with regard to the nature and the legal meaning of these judgements.

Company documentation indicates that the defendant became a director of this company on 3rd July 1989, and this occurred after a general meeting of the same company which took place on this same date.  Furthermore, the defendant was not a director when the company was constituted.

The Court examined these judgements;

(a) The judgement given by the Court of First Instance in Piraeus on the 5th February 1979, where the defendant in his absence together with other

2

co-accused, was accused of not paying the employees their salaries for their work on the ship 'HOMER T'. He was condemned to three months imprisonment and had to pay a fine of 40,000 drachmas.

(b) The judgement of the Court of First Instance in Piraeus given on the 26th September 1990, where he was again found guilty of not paying the Captain of the ship. He was condemned to three months imprisonment (this was changed into a pecuniary fine) and 50,000 drachmas.

This judgement was also given "by default" as the accused defendant did not appear.

The plaintiff exhibited a certificate (at folio 39) indicating that the defendant did not appeal from this judgement. However, this certificate makes reference to the case 13654/80 whereas the case referred to here is 13656.

(c) In the Court of Magistrates of Piraeus on the 14th May 1981, where he was accused of fraudulent bankruptcy together with two other people. The defendant Prokidis was absent again and this despite the fact that it results that the accused Baglatzis was primarily responsible for the crime, the Court held the defendant responsible *"the accused Stylianos Prokidis being the Director general of the above mentioned enterprise under bankruptcy in common with Mektarios Nakyrygiannis as its legal representative, they have deliberately offered their direct assistance to the first one mentioned and in executing the main action."*

And he was condemned to imprisonment for one year.

No appeal from this judgement was filed according to what is stated in the certificate at folio 58.

On the 5th September 1985, the Court of Magistrates of Piraeus gave another judgement "by default". Here he was condemned with others to imprisonment and the payment of a fine because they failed to pay social security contributions of the employees. In this case it also seems that he himself actually participated in this. His participation was direct. He was not a representative. No appeal from this judgement was made until the 6th June 1994. (Certificate at folio 74).

On the 28th September 1994, the deputy curators drew up the usual statement of defence that they were not informed about the facts. The Court accepted Dr. Louis Cassar Pullicino's request to take on the case as a representative and special mandatary of the defendant and revoked *contrario imperio* its decree nominating the curators.

In his subsequent statement of defence and his sworn declaration, the defendant raised the following legal and factual pleas:

3

1.  This Court's lack of jurisdiction because none of the sub-paragraphs of Article 742 of Chapter 12 apply;
2.  The company Glovegold Shipping Limited and the defendant personally and as a director of the same company are responsible for filing the action and for this reason he does not have the required juridical interest;
3.  That before relying on Article 125 of Chapter 168, the plaintiff should have proceeded separately in order to obtain a declaration that the judgements he referred to are enforceable in Malta;
4.  The judgements given by the Greek Courts are null because they were given in the defendant's absence, the defendant was not validly served with a summons, they are not valid under Greek Law, they do not satisfy the requisites of Article 826 and 827 of Chapter 12, and when they were given they were in violation of the European Convention on Human Rights.  This Convention forms part of both Maltese and Greek domestic law;
5.  In any case, this Court's judgement cannot have retroactive effect.
6.  And finally the judgement in question was not tantamount to a condemnation with regard to public trust, theft, or fraud, according to Maltese public order.

During the hearing held on 4th November 1994, the respective lawyers agreed, that this case can be heard together with another case in the same inverse names, namely case No. 1429/94 NA.

By means of a note filed on the 9th November 1994 the plaintiff exhibited translated copies of various other judgements.  This time, however, the judgements were delivered by the Court of Athens.

(a) Following an appeal by the defendant the latter was on the 6th June 1977, found guilty of a violation of the law on cheques and was condemned to imprisonment.
(b) The Court of First Instance also condemned him to ten months imprisonment and to pay a fine of 80,00 drachma on the 30th January 1979 because a cheque was not honoured.
(c) On the 26th January 1979, he was condemned to the three months imprisonment and a fine for the same charge.
(d) Further, on the 30th May 1979 for a cheque that was not covered by the necessary funds.

It must be observed that in these cases despite the defendant's absence, witnesses and documentary evidence were produced.

And this was also true with regard to the judgement given on the 28th October 1976 and (d) with regard to the judgement given on the 26th January 1979 and this apart from the judgement (c) given above.

The judgements of 2nd June, 3rd February and 11th April 1979 concern the failure to pay the employees, whereas that judgement given on the 20th May 1981 regards a violation of the Greek Exchange Control Regulations.

4

No appeal from these judgements were filed.

During the court sitting of the 22nd November 1974 the following minute was *"The parties agree that despite that the request for the case to be heard urgently was granted in writ of summons number 1421/94NA and despite that a decree was given in this case stating that the two cases, that is, number 1421/94NA and number 1116/94NA must be heard simultaneously.  The case on the merits, on which the outcome of the two cases depends is that numbered 1116/94NA and the evidence will therefore be produced in this latter case."*

Apart from Advocate Dr. Joseph Bonnici and Dr. Tonio Mark, the plaintiff Konstantinos Kostopoulos testified in the aforementioned sitting.

The latter said that he was negotiating with a Greek Bank for financial assistance so that he would be able to buy another vessel, when *"In the course of the conversation I informed the bank that I was not the only partner, but that Mr. Prokidis was a partner with me."*

*"After I had given the Bank all the information and it seemed as if everything was going to be alright, for no apparent reason, the Bank stopped negotiating with me and the manager even stopped speaking to me on the phone."*

*"I enquired as to why the Bank should have changed their attitude completely and after some time, I discovered that the Bank had a file on Mr. Prokidis and in this file it was evident that from a time before we started our Corporation, Mr. Prokidis had not honoured a certain amount of his liabilities."*

*"This is the first time that I discovered about Mr. Prokidis' past, and, obviously, it meant that I could not continue co-operating with him in business."*

*"I discussed this information approximately in June of 1993.  At about the same period I met Mr. Prokidis in London."*

*"Mr. Prokidis accepted what I told him as being correct.  After I mentioned this situation to Mr. Prokidis, his behaviour became very bad.  He started accusing me of certain things, in coming to the office, and behaving in an ungentle manner."*

*"The Bank because of their confidentiality did not give me precise information with regard to Mr. Prokidis, but I understood that he was a "person non grata" and that they would not deal with me as long as I was in a partnership with him."*

The  defendant gave evidence by means of an affidavit in the Maltese High Commission in London on the 17th November 1994.

5

*He complained that he was not notified about the present proceedings.*

This is something which definitely did not cause him any prejudice, although he could have been prejudiced when he was not notified with the proceedings in Greece.

In his affidavit he says that he departed from Greece in 1987 and that he did not know about the proceedings filed against him. Besides that, he never resided in house number 129, Filonos Street in Piraeus.

He also makes a declaration dated 12th November 1994, with his comments on the various Greek judgements. This declaration is found in folio 18 of the second volume.

Despite the fact that stamps of the Maltese High Commission exist it does not seem that this is a sworn declaration.

Apart from this, however, the comments he passed, many of which are quite relevant from a technical point of view do not effect in any way the substance and the merits of most of the judgements mentioned.

At this stage the Court also wants to state that it is definitely not its task to enforce foreign criminal decisions. However, it can examine whether these decisions are sufficient evidence and to do this will refer to the deficiencies contemplated in Article 125 of Chapter 168.

Photocopies of extracts from the defendant's passport are exhibited in pages 23 to 105 of the second Volume. These photocopies indicate that the defendant was not in Greece when he was condemned by the Greek Courts.

A certificate issued by the Greek consulate in England dated 26th October 1994 also confirms the defendant's absence.

The defendant also exhibited an affidavit of the lawyer P.J. Yannopoulos given before the Maltese Consul in Piraeus.

This legal opinion is mainly a technical one concerning the judgements *"which have already been bad and are not executable."* And with regards to the service upon the defendant in these proceedings, this lawyer again does not say anything about the merits of the charges.

On the other hand, on the merits the plaintiff exhibits two legal opinions, one from the legal office of Pologiorgis and others as marked as exhibit K "K" at page 72 of the first Volume.

*"The word fraud in the texts means the intention (in Latin "dolus"). The intention of the actor or of the accessory, comprises the offender's knowledge of the material elements of a criminal act, and also the will of*

6

*the offender that this act shall cause the consequences included in the material elements of the criminal act.*

These lawyers have their practice located and established in Pireaus.

He also exhibits other opinions by the legal group GRVD which operates in Athens as Document "L" on page 73 of the first Volume because it must be said that the first group of judgements came from the Court of Piraeus, whilst the second group from the Court of Athens.

The Greek Advocates from Athens are saying that:

*"Considering that: (a) in Penal Law the basis element, in order for someone to be convicted, is mainly, the intentional and malicious attitude of such person as against the results of his acts, which is in fact the basis of the accusations against Mr. Prokidis, and (b) perusing relevant judgements issued against Mr. Prokidis, it is established, that the convicted Mr. Prokidis acted in fraud in all cases, and the accusation brought against him, do constitute fraudulent offences according to Greek law."*

And this after these Advocates observed that according to Greek penal procedure, the defendant was legally summoned to appear before the courts.

This Lawyer gave evidence *viva voce* in a sitting on the 20th September 1994.

Other relevant points which derive from the evidence given by the Lawyer are:

1. that service against the defendant was made in accordance with the regulations found under Greek law;
2. that out of all judgements, the defendant only appealed from one of them but the defendant failed to appear at the appeal and it was then deserted;
3. in the majority of cases in fact, excluding the judgement which was appealed from, service was made to apply by means of procedures which are similar to that of *"posting up and affixing the summons"* found under our law both when the address was indicated and when it was not known; and
4. finally *"these all effect public trust and are connected with fraud. More specifically a lot of the violations I would say, about half of these instances concern this matters. And therefore it is not merely a matter of fraud but also a matter of violation of public trust, in so far as it concerns funds against the free circulation of money. Other crimes concerned violation with regard to non payment of wages in fraud, and I am seeing two judgements concerned the failure to pay social security payments.*

7

*These later two are also offences of public trust. Since the majority of these cases concern public trust, this is the reason why the state ex officio proceeded itself.*

*On other case concerned fraudulent bankruptcy, and yet another in violation of Greek Exchange Control Laws."*

With regard to evidence, referring to the evidence produced by the defendant, specifically the affidavits of Theofonis Baglatzis who was one of the co-accused with the defendant, of Nikollaos Zoulis, who was a director of the company in question together with the litigant parties, as was Hussain Pal and the deposition of Bemosthenis Constontopoulos who was employed as a Captain with the companies with which the defendant was involved.  The gist of this evidence is the following:-

1. It was Baglatzis and not the defendant who was responsible for the running of those companies that the defendant and Baglatzis were involved in together.  The defendant was not responsible for running the company;
2. the defendant was a gentleman, he was honest and behaved with integrity; and
3. the plaintiff had always known that the defendant had problems with the authorities of justice in Greece.  He also knew the details and the particulars about the problems the defendant had.

The Court having examined these relevant facts now comes to apply these facts to the case in question.

And these facts will be applied particularly in the context of the legal complexites of the case.

For this to be done one must not only look at the defence pleas raised by the defendant but must also examine the dossier (note) containing the written legal submissions presented by the respective parties.

The first defence plea raised by the defendant concerns the Maltese Courts' lack of jurisdiction under Article 742 of Chapter 12.

Apart from the fact that, the Registrar of Commercial Partnerships is also a defendant in this case, and also that he failed to file his Statement of Defence, this Court agrees that a judgement against him can only be subsidiary to the main judgement against the first defendant, and this is the reason why his presence in the case is not enough to found the jurisdiction of these Courts.

Sub-article 1 of Article 742 of Chapter 12 provides that:

*"Save as otherwise expressly provided by law, the civil courts of Malta shall have jurisdiction to try and determine all actions, without any distinction or privilege, concerning the persons hereinafter mentioned:*

8

(a) citizens of Malta, provided they have not fixed their domicile elsewhere;

(b) any person as long as he is either domiciled or resident or present in Malta;

(c) any person, in matters relating to property situate or existing in Malta;

(d) any person who has contracted any obligation in Malta, but only in regard to actions touching such obligation and provided such person is present in Malta;

(e) any person who, having contracted an obligation in some other country, has nevertheless agreed to carry out such obligation in Malta, or who has contracted any obligation which must necessarily be carried into effect in Malta, provided in either case such person is present in Malta;

(f) any person, in regard to any obligation contracted in favour of a citizen or resident of Malta or of a body having a distinct legal personality or association of persons incorporated or operating in Malta, if the judgement can be enforced in Malta;

(g) any person who expressly or tacitly, voluntarily submits or has agreed to submit to the jurisdiction of the court."

 In the context of this Article this Court must examine whether this case concerns any of the persons mentioned in the sub-paragraphs of Article 742, sub-article 1.

None of the contending parties in this case are citizens of Malta or domiciled in Malta.

However, this case is indirectly concerned with a company that is definitely domiciled in Malta.

It is relevant that this lawsuit is concerned with this company because of the fact that the action is filed to determine how this company is going to subsist, and be run, in view of the fact that a legal entity can only function through the directors that run the company in its name.

That apart from this, by interpreting the law widely albeit in an admissable manner it can be held that the company's assets, that is the shares of the said company amount to *"goods which are found in or can be found in Malta"* sub-paragraph (c) of that Article, and that the operation of a legal person cannot be easily separated from the entity which is registered in Malta and is thus situated in Malta.

This defence plea is rejected for these reasons.

9

The defendant's second line of defence is that the plaintiff *proprio* could not institute this case because he does not have a legal interest.

The company is responsible for such an action. In normal cases there is no doubt that the defendant is right. It is the company itself, which must file actions, even against its own director. The company must do this, either through the board of directors or by means of a decision taken at a general meeting.

This case however, is a particular one. And there is no doubt that it is a case that can be the cause of direct harm to the co-director, where only he and another co-director are in charge of the running of the company in question. This potentiality of direct harm, therefore, gives the individual concerned the right to do all that is possible to avoid this harm becoming more serious. This applies in cases like the present one, where all the directors represent the company in question.

These considerations lead the Court to ask whether a particular person has juridical interest if it results that the co-director is found guilty of fraud?

The problem is aggravated due to the fact that as the plaintiff correctly states, the law is silent with regard to the issue of who is entitled to file this action.

By analogy, however, with other cases, in the law that deals with the behaviour of behaviour and removal of directors, the Court feels that it can find a solution to this problem.

Article 123 and Article 126 of sub-article (2) make it clear that only a company can file the action and not an individual.

The law does not state this in Article 125 and as a result of this the Court believes that any person who has a juridical interest can propose this action.

One of these persons in this case is definitely the plaintiff.

However, apart from this consideration, the plaintiff is also *"the ultimate beneficial owner"* of half the company's assets.

Doctrine recognises the fact that there exist cases where an individual shareholder can propose a personal action against a director who is, together with all the other members of the Board an agent of the company. However, not only personally and individually he has a fiduciary role that emanates from a position that is also contemplated in the law under the duties that every director has towards the company.

This defence plea is also rejected for these reasons.

10

This fiduciary concept that binds a director not only vis-à-vis the company but also vis-à-vis the co-directors, the shareholder partners and also with regard to the commercial community leads this Court to understand what the legislator must have had in mind with this Section.

The law wants that persons who have one of the incapacities contemplated in sub-paragraphs (a) and (b) of Article 125 are not to qualify to be appointed as a director.

And if this person was interdicted, incapacitated or declared bankrupt in accordance with the laws of his or her country, can this person propose that he or she take up this position until the proceedings are once again instituted Malta which for various reasons and motives is certainly not the most ideal forum?

This Court is of a different opinion.

These procedures must be accepted from a purely factual point of view, when obviously one is not contemplating the enforceability of these judgements according to the decision of that country in which the crime took place or this incapacity occurred.

The plaintiff is stating that the defendant was found guilty of various crimes against public trust by the competent tribunals of the country where these crimes took place.

He claims that this fact is enough and it is sufficient for Article 125 to be applied.

The territoriality of criminal law is a principle which is established under international law.

Despite this, this Court feels that it must say that the penal procedures that were applied in the Greek Court, expose themselves to criticism especially with regard to the way the service was carried out.

An examination of the said judgements indicate that the Greek Court did not only have the depositions of a person or persons as evidence but in proceedings relating to the dishonoured cheques the Court had documentary evidence.

Out of all the crimes which the same defendant was found guilty of, it is this crime that lead this Court to accept the plaintiff's position, after having also considered that this is a crime that leads the plaintiff to be concerned with his co-director's behaviour.

It is a crime that even under our penal system is, in many cases considered to be one amounting to fraud.

11

Another fact which is also very relevant to this issue, is what the plaintiff states in his (note) dossier of written legal submissions namely, that defendant never denied the fact that he committed the crimes in question even though he had the opportunity to do this. His defence is totally of a procedural nature and states how things occurred long before the penal procedures started as well as during the procedures.

Neither the Court can agree with the defendant's interpretation of Article 628 of Chapter 12 of the Laws of Malta which states that:

*"The acts of any foreign government, or of any department of a foreign government, or of foreign courts of justice, or of any foreign establishment, authenticated by the diplomatic or consular representative of the Government of Malta in the country from which they emanate, or by a person serving in a diplomatic, consular or other foreign service of any country which by the arrangement with the Government of Malta has undertaken to represent this Government's interests in that country, or by any other competent authority in the country from which they emanate, shall also be admissible as evidence in the same manner as the documents mentioned in the last preceding article."*

Article 627: this article does not apply in these proceedings because the contrary has not been proven and for this reason the documents the exhibited by plaintiff effectively prove what they state.

Retroactivity is the final issue that that remains to be decided.

Here this Court agrees with the defendant's allegations that the judgements given by these Courts are binding as between the parties from the date of the judgement onwards. This is more obvious and logical in a case such as this where otherwise the rights of third parties can be made effected. Third parties who were unaware of what was happening, could have also contracted with the same defendant in role as a director of the company in question.

For these reasons:

This Court grants the plaintiff's first request but it does not grant it in a retroactive manner. The Court grants the plaintiff's second request and also grants his third request and orders the defendant Registrar of Commercial Partnerships to tend to the publication in the Government gazette within a week from today.

Costs: Due to the particular nature of the case two thirds of the costs are to be borne by the defendant and the plaintiff must pay for a third of the said costs.

When it comes to costs with regards to the other defendant, the Registrar of Commercial Partnerships is responsible for all his costs in view of the

12

fact that he failed to file a statement of defence although in normal circumstances the latter is never held responsible for costs.

### The Appeal

Advocate Dr. Louis Cassar Pullicino *nomine* appealed from this judgement after he raised a number of objections to the judgement of the First Court, such objections comprise a number of pleas of a procedural nature and also on the merits.  To support his objections he premised the following facts, which in his opinion, resulted to have been proven and were the basis of the present suit.

1. On the date when these proceedings were instituted, the litigants Kostantinos Kostopoulos and Stylianos Prokidis were the only directors in the company "Glovegold Shipping Ltd., which owns the vessel m.v. Anthenor Express which has a Maltese flag.  None of the litigants are shareholders in this company.  In fact, "Glovegold Ltd" are this company's shareholders.  The company "Glovegold Ltd" is registered in Malta, and holds 499 shares whilst Dr. Tonio Fenech holds the remaining shares.  The main shareholder of "Glovegold Ltd." is another company called "Corporation Link Ocean Carriers (UK) Limited" which is registered in England.  The litigants only hold equal shares directly and personally in the latter company.

2. In these last few months the litigant-directors started having serious disagreement.  The plaintiff is basing this case on a series of judgements given by the Greek Courts which judgements and proceedings were all instituted whilst he was residing in England, and in fact he was never regularly notified with these proceedings and neither was he present for the same proceedings.

This Court dealt with the first plea of lack of jurisdiction which was raised by the appellant *nomine* and rejected in the judgement appealed from.  As a matter of fact, the First Court stated that it had jurisdiction because (I) the subject matter of the dispute concerned the running of a Maltese company and this gives the Maltese Court jurisdiction and the ability to also take cognisance of the dispute in a situation where the only two directors and litigants in the dispute are of foreign nationality and the Maltese company is not even a party in the proceedings; and (2) that once the company's assets that is, the shares of the same company are found in Malta, the Maltese Courts have jurisdiction.

This was the defence plea that was first dealt with in Court and the case was put off for the judgement with regards to this objection with the intention that the appeal will continue to be heard with regards to other objections after this plea/objection is dealt with.

The appellant submits that the First Court's consideration was from a juridical point of view was unacceptable because the First Court did not give any explanation about how "the running of a Maltese company" falls under the sub-articles of article 742 of Chapter 12 of the Laws of Malta.  Besides that it

13

does not result from anywhere that the dispute was in any way, not even remotely, concerned with the assets of this Maltese company. The fact that both the plaintiff as well as the defendant personally were Greek citizens is not being contested, whilst the defendant resides in England, the plaintiff resides both in England and Greece. Both of them were the two directors of the Maltese company "Glovegold Shipping Ltd." The appellant emphasises that as clearly stated in Article 742 of Chapter 12 of the Laws of Malta that the jurisdiction of the Courts was determined by persons who are parties to the case. The parties to this case are two foreign citizens, apart from the Registrar of Companies who is also a party in this case. The Registrar of Companies was not interested in the merits, and was sued simply in order for the party to the judgement to be able to give effect to a favourable judgement that the Court could have given in case he finds in favour of the plaintiff with regards to the first two requests of the plaintiff. The Registrar of Commercial Partnerships' presence is required to give effect to the judgement that would eventually be given by the Maltese Courts alone was not enough to establish the Courts' jurisdiction.

This Court, even though not as presently composed, had the opportunity to analyse Article 742 of Chapter 12 of the Laws of Malta in detail with regard to sub-article (1) and the Court said that: *"Without prejudice in cases where the law expressly states otherwise, the Civil Courts of Malta without any distinction or privilege have jurisdiction to hear and decide <u>all the cases regarding the persons</u> referred to hereunder."* It is noted that the law talks about <u>persons</u> that fall under the jurisdiction of the Civil Courts of Malta. It does not only refer to persons who appear as plaintiffs or are called to upon to appear Court as defendants. It refers to cases that concern these persons. This, therefore, does not necessarily mean – even though generally speaking and as a rule this is the case – that the object and merits of the case would be a right which the litigants will contest between themselves and that the Court will finally decide to which one of them it belongs. What it means is that the Court is also competent and has jurisdiction to entertain cases where the parties are contesting the merit the determination of which, apart from the fact that it defines their interest in it, also regards a third person who is not a party to the case directly and it can effect this person's right. In those cases the Court is competent to consider the merits of the case provided the third person is a Maltese citizen domiciled in Malta, if it would not have otherwise been competent."

In that case this Court came to the conclusion that it had jurisdiction to deal with the merits that regarded the interests of a minor, a citizen of Malta, domiciled in Malta, notwithstanding that her parents were both persons who were not citizens of Malta, were not domiciled in Malta and were not resident in Malta. By applying the same argument to this case which was between persons who were not citizens of Malta and not residents of Malta, this Court had jurisdiction to consider the merits once the case regarded a Maltese person resident in Malta and that is, a limited liability company and registered in these Islands. In fact, the parties were shareholders in the company "Glovegold Shipping Ltd." and the merits regard the contestation with regard office of the director of this same company and which directly impinges,

14

therefore on the administration of the company. Undoubtedly, therefore, the merits of this case regard a person – even if it is a moral person – who definitely lives and resides in Malta.

This Court cannot see why it should not adopt an interpretation of this kind at a time when commerce and information and means of communication have become globalised. The Court extended its traditional interpretation of Article 742 in this manner because it was of the opinion that this is permitted by the wording of the law. It is not correct to state, as was stated in recent pronouncements that with this interpretation the Court understood that the law intended to grant the Maltese Courts jurisdiction to hear and decide all the cases which concern the citizens of Malta. It is not true that the Court wanted to give them total protection, wherever they happened to be, even if they were not residents of Malta and even if they were not defendants in front of it, as long as the merits of the case concerned them and as long as they remain domiciled in Malta. The judgement given by this Court was only given in the sense that the Maltese Courts had jurisdiction to decide all the cases that regard persons mentioned in sub-paragraphs (a) to (j) of article 742 until they satisfy all the requisites of those sub-paragraphs even if those persons were not parties to the case. Thus, in this case even if the parties are not themselves qualified under one of these sub-paragraphs. This means that the case between two parties who are not citizens of Malta and are not domiciled or resident in Malta whose merits concern a citizen of Malta that would have established his domicile elsewhere will not fall under the jurisdiction of the Maltese Courts unless it qualifies under another sub-paragraph of Article 742.

These details which are precisely stated were necessary not only to clarify this Court's deliberations in the case in the names of "Raymond Calleja vs the Advocate Doctor Raymond Pace *et nomine*" which was decided on the 31st January 1996 and was referred to above, the reasoning whereof, where applicable, is to be considered that to be referred to in this judgement, but also so that an interpretation which is not wider than that which the legislator intended to give in the Article being examined would not be given.

For these reasons this Court considers the appeal insofar as it is based on the objection concerning the lack of jurisdiction as not sustainable and therefore rejects it. The appellant *nomine* is to bear costs.

This case was adjourned so that it would be dealt with ulteriorly in a Court which is composed in a different manner.

Deputy Registrar

Rf.

This is a true translation of the original judgement in the Maltese language.

M. Firman

COURTS OF JUSTICE - MALTA
SIGNED A... ... ... ... ... FORE ME
DAY OF ...

R.L. MADELEINE FIRMAN

15