

MALTA

# COURT OF APPEAL

Chief Justice
Vincent De Gaetano

The Hon Judge
Albert J. Magri

The Hon Judge
Tonio Mallia

Sitting of the 6th July 2007

Appeal Number 2352/1999/1

**Koufra Holdings Limited**

v.

**Eridan Shipping Limited,
Kamma II Shipping
Company Limited, Antarus
Shipping Company Limited
and Ferrum Shipping
Company Limited**

The Court:

Had sight the writ of summons whereby the Plaintiff Company premised:

That through a contract dated the 21st of September 1998, in the records of Notary Remigio Zammit Pace, the Plaintiff Company purchased from a certain Stanislaw Filatov

1

and his wife Irina Filatova, the tenement consisting in a semi detached villa, un-numbered, known as "Echuca", previously known as "The Valley Ville" that is situated at Triq tal-Franciz, Ta' L-Ibragg, St Andrews limits of San Gwann / Birkirkara, which property confines from the south on the same street, from the north and the east with the property of the heirs of Dr Patrick Holland or his successors in title, and from the west with the property of Victor Portanier or his successors, and this for the price of ten (sic) thousand Malta liri (Lm 100,000) which price was paid;

That the Plaintiff Company subsequently came to know that on the 18th of September 1998, the Companies Kama II Shipping Company Limited, Antarus Shipping Company Limited and Ferrum Shipping Company Limited and Eridan Shipping Limited, presented an application before the Civil Court's First Hall against curators to be appointed by this court to represent the "absent" Stanislaw Filatov and his wife Irina Filatova, where they requested the issue of a warrant of Prohibitory Injunction against the same spouses Filatov in order to enjoin them from selling, removing, transferring or disposing *inter vivos* whether by onerous title or gratuitous title any property, especially with regard to the "Echuca" tenement in question, and this on the basis of an alleged debt of sixty (sic) thousand Maltese Liri (Lm 600,000) which debt was liquidated for the ends of the warrant as being the total amount due to the Applicant Companies by the respondents;

That by means of decree number 3299/98 of the 18th of September 1998 the First Hall of the Civil Court provisionally acceded to the request and reserved the right to make definite provisions at a later stage;

That a copy of the warrant and the decree was served upon the Director of the Public Registry on the 18th of September 1998, at one thirty in the afternoon, and that is after the Registry is closed to the public and at which time the employees of the Registry were no longer at work due to the fact that they were, at that time, working on a half day basis;

That the day and time when the warrant of Prohibitory Injunction in question was recorded in the books of enrolment, however not registered, and in this regard the Plaintiff Company points out that the 18th of September was a Friday, that the 19th and the 20th of September were the weekend and the 21st of September, when the contract was made, was a Public Holiday;

That therefore it should result that the warrant of Prohibitory Injunction number 3299/98 was not entered in the books of enrolment before the 22nd of September 1998, that is after the contract for the transfer of the tenement in question to the Plaintiff Company was made;

That in any case and without prejudice to the above, even if the warrant of Prohibitory Injunction was registered in the books of enrolment on the 18th of September 1998, this only took place after the Public Registry was closed to the public and therefore it should not affect the validity of the Plaintiff Company's contract of purchase, this because the Plaintiff Company had no way of coming to know of the existence of the warrant;

That in fact, the searches made by the Plaintiff Company's Notary and which searches were updated until the last working day before the contract was signed, that is until the 18th of September 1998, confirmed that there was no obstacle to the publication of the contract;

That it further results that the warrant was issued against curators for the "absent" Stanislaw Filatov, when the latter was present in Malta;

That this state of uncertainty regarding the date of registration of the warrant of Prohibitory Injunction in question and regarding the validity or otherwise of the Plaintiff Company's Contract of Purchase is prejudicing the Plaintiff Company;

For these reasons, the Plaintiff Company requests the Defendant Companies to give their reasons why, this Court should not:

1. Declare that the issue of warrant of Prohibitory Injunction number 3299/98 issued by the Civil Court, First Hall in the names of "the Companies Kama II Shipping Company Limited and Antarus Shipping Company Limited, and Ferrum Shipping Company Limited and Eridan Shipping Limited versus Dr Joe Azzopardi and L.P. Joanna Dingli appointed as curators to represent the absent Stanislaw Filatov and his wife Irina Filatova", did not affect the contract dated the 21st of September 1998, in the records of Notary Remigio Zammit Pace, by means of which the tenement known as "Echuca", previously known as "The Valley Ville" that is situated at Triq tal-Franciz, Ta' L-Ibragg, St Andrews limits of St.Julians, was sold to the Plaintiff Company;

2. Declare that the above-indicated contract of the 21st of September 1998 in the records of Notary Remigio Zammit Pace, is valid, in so far as it was not affected by the above quoted warrant of Prohibitory Injunction number 3299/98;

With costs against the Defendant Companies who were also enjoined for a reference to their oath;

Had sight of the Defendant Companies' note of pleas, where they pled:-

That the Plaintiff's demands are without basis in fact and law and that this Court should reject them with costs against the Plaintiff Company since the contract dated the 21st September 1998 in the records of Notary Remigio Zammit Pace (mentioned in the Plaintiff's first demand) is void and without effect as per Article 873 (10) of Chapter 12, this because the said contract was made after the warrant of Prohibitory Injunction number 3299/98 was issued on the request of the Defendant Companies;

The Court had sight of the judgment issued by the First Hall Civil Court on the 12th November 2004 by virtue of which it decided as follows:
In the first place it rejects the all the defendants' pleas and accepts all the Plaintiff's claims and declares that the warrant of prohibitory injunction number 3299/98 in

3

question, is ineffective as regards the contract dated the 21st September 1998, in the acts of Notary Remigio Zammit Pace by means of which the tenement known as "Echuca", previously known as "The Valley Ville" that is situated at Triq tal-Franciz, Ta' L-Ibragg, St Andrews limits of St. Julians, was sold to the Plaintiff Company and it declares that the same contract is valid in as much as it is not affected by the warrant of prohibitory injunction cited above.

In the light of the special circumstances of the case and the nature of the issue involved the costs are shared equally between the parties.

That Court delivered judgement after taking into account the following considerations:
In its writ of summons the Plaintiff Company makes reference to the contract of the 21st September 1998 in the records of Notary Remigio Zammit Pace, by means of which the same Plaintiff Company purchased from third parties, that is Stanislaw Filatov and his wife Irina Filatova, the tenement known as "Echuca", previously known as "The Valley Ville" that is situated at Triq tal-Franciz, Ta' L-Ibragg, St Andrews and this at price of one hundred thousand Maltese Liri (Lm100,000);

That the Plaintiff Company premised that, after the said contract was published, it got to know on the 18th September 1998 that the Defendant Companies had obtained the provisional issue of a warrant of Prohibitory Injunction against the said third party spouses Filatov, in order to enjoin them from selling, removing, transferring or disposing *inter vivos* whether by onerous title or gratuitous title the said tenement in St Andrews. The same Plaintif Company alleges that the service upon the Director of the Public Registry was done on the same 18th of September 1998, however, this was done after the Public Registry was closed to the public. They also allege that the registry books do not indicate the day when the said warrant was registered. Further because the 18th of September was a Friday, obviously the 19th and the 20th of September were a Saturday and Sunday, whereas the 21st of September, the day the said contract was entered into, was a Public Holiday. For this reason the warrant could not have been registered before the 22nd of September 1998, and therefore after the contract was made. Even if the contract was registered on the 18th of September 1998 this took place when the public had no access to the Public Registry. In view of the above, the Plaintiff Company claims that the said warrant did not affect the validity of the Plaintiff Company's Contract of Purchase and this because it was not possible for the Plaintiff Company to get to know of the existence of the warrant;

Besides this, the Plaintiff Company claims that the said mandate was issued against curators for the "absent" Stanislaw Filatov, when the latter was present in Malta. In this regard the Plaintiff Company failed to produce any evidence. Therefore the Plaintiff's demand cannot be accepted on the basis of this premise. This is being said apart from other considerations that may be made at a later stage;

On their part, the Defendants pled that the said contract of the 21st September 1998 is void and without effect and this as per the provisions of Article 873 (10) of Chapter 12,

4

because the said contract was made after the warrant of Prohibitory Injunction in question;

Therefore it must be decided whether the said warrant of Prohibitory Injunction affects the Plaintiff Company's contact of purchase;

The Defendants cite the provisions of Article 873 (10) of Chapter 12. This Article provides that as soon as the Director registers a warrant, such as that in question, any sale and transfer of immovable property referred to in the warrant, and that is made after the said registration, is void and without any effect. Here one must refer to Article 873 (9) of the same Chapter. This Article provides, among other things, that whoever requests the issue of such warrant must ensure that the warrant is served upon the Director of the Public Registry, who should promptly enter the warrant in the appropriate registers. These same provisions also emphasise that these registers must be open to all. Therefore the element of publicity is of great importance. It is not sufficient that the warrant is solely served but it must also and is essential that the warrant is registered in the appropriate books, which books are available to all and sundry;

From the evidence produced, it results that at the time in question, since it was during the summer months, the Public Registry used to open to the public until 11am. The office hours for employees of the same Registry were until 1:30 in the afternoon. It used to happen that some employees would stay on after office hours to do some private searches. It also used to happen that some notaries were allowed to enter the Registry after 11:00 in the morning in order to update their searches;

With regard to this specific case it results that the warrant of Prohibitory Injunction in question was served upon the Director of the Public Registry on the 18th September 1998 at 1:30pm and therefore at exactly the time that the employees would have ended their working day. Generally whenever the Director receives a warrant such as the one in question, he would be given two copies. The first copy is annotated with the date and time of service and the same copy is placed in a box file that is kept under lock and key in the Director's Office. The second copy is passed on to a Clerk so that he may index and register the warrant in a book kept for that purpose. This is the book that is made available to the public;

That which was said by some of the Officials of the Public Registry (Dr. Sapiano and Carmel Mifsud), that in their opinion the warrant in question was registered the moment it was served upon the Director and that by way of the said service the warrant was made available to the public, does not reflect that which the Law intends, that is to say that publicity is essential and vital and neither does it reflect that which is reasonable. The said witnesses are being excessively formalistic and are forgetting the Law and reality. It may be true that the Director stated that whoever wished could have examined the box file containing the first copy. However, it results that this box file was kept under lock and key and the respective key was kept by the Director. Therefore there could be times when the Director is otherwise engaged outside the office;

5

The Court is of the opinion that, on the basis of the said legal provisions, registration under law should be taken to have occurred as soon as the warrant is indexed and registered in the appropriate book that is also available to the public;

It is far more probable that owing to the fact that the service was made at the time when the Registry was closing, the warrant in question was not registered straightaway and was only registered after the contract in question of the 21st September 1998 took place. In fact an employee of the Public Registry confirmed that he only entered the said warrant in the appropriate index on Tuesday the 22nd of September 1998;

In the light of the above it amply results that the warrant of Prohibitory Injunction should not affect the said contract and this owed to the fact that the same warrant was registered after the contract took place. Thus, the Plaintiff's demands should be accepted. Further, the notary that published the contract confirmed that the searches, so that the contract could be done, were updated until the last possible date, that is until Friday the 18 of September 1998 and there resulted no obstacle or impediment to the contract being made. Further, it would appear that prior to the contract in question being made, neither the Plaintiff Company, the notary that published the contract, nor the third party vendors or their representatives were served with the warrant;

Had sight of the appeal application of the Defendant Companies by means of which, for the reasons expressed therein, they pled the revocation of the judgement of the Court of first instance and the consequentially denial of the Plaintiff's claims.

Had sight of the reply to the appeal application of the Plaintiff Company in which, for the reasons expressed therein, they submitted that the challenged judgement be confirmed;

Had sight of all the acts of the proceedings and the documents exhibited;

It heard the defendants of the parties;

It considered;

The facts giving rise to this case are clear. By decree given on the 18th September 1998, the First Hall Civil Court provisionally granted the claim of the Appellant Companies so that Stanislaw Filatov and his wifeIrina Filatova are prohibited from selling the villa known as " Echuca", situated at Triq tal-Franciz, Ta' L-Ibragg, St Andrews. The warrant of prohibitory injunction which was provisionally granted was notified to the Director of the Public Registry the same day at 1.30pm. This warrant was given to the Assistant Director, Dr.Adrian Dingli, who reviewed it, gave it the progressive number 254, he wrote the date and time of receipt on the warrant and signed it. He inserted a copy into the box file kept in the Public Regisrty, and he passed on a copy to the department section in charge of indexing the warrants. The official who keeps this index was not there at the time and since the 18th September 1998 was a Saturday and Monday 21st September was a public holiday, the warrant was indexed on the morning of Tuesday 22nd September 1998.

In the mean time, on the 21st September 1998 the spouses Filatov, sold the villa to the Plaintiff Company. Considering that this transfer took place after the issue of the warrant and after the warrant was notified to the Director of the Public Registry, the Defendant Companies are invoking Article 873(10)[1] of the Code of Organisation and Civil Procedure (Chapter 12 of the Laws of Malta) and say that the contract is null.

The Plaintiff Company does not agree and states that once the contract took place before the warrant was indexed, as stated in Article 873(9), the nullity as provided for in the law does not apply.

The Court examined Article 873 of the above mentioned Chapter 12 and notes that sub-Article (8) provides that when a warrant is issued prohibiting the sale of immovable property, the application "shall include the details regarding the person against whom the warrant was issued and that are required by law for the registration of the transfer of the immovable property"

Sub-Article (9) then provides that, "The warrant referred to in sub-article (8) shall upon its issue and at the expense of the applicant, be served by the Registrar within twenty-four hours on the Director of the Public Registry and the Land Registrar who shall forthwith register the same in books kept for the purpose. Such books shall be indexed and accessible to the public. It shall also be served upon any person indicated by the applicant."

The sanction of nullity is provided for in sub-Article (10), which states that "Upon registration of the warrant referred to in sub-article (8) by the Director of the Public Registry, any future sale, alienation, transfer or disposal of immovable property to which the warrant refers shall be void and to no effect".

The divergence between the parties centers on the meaning of the words, "registration of the warrant" mentioned in sub-Article (10), as even though the appellant maintains that the phrase has a technical meaning, and that the meaning in the Public Registry Act (Chapter 56) should be attributed to it, the other party argues that the reference of the law should be to the registration and the indexing of the warrant according to sub-Article (9).

The Court, after considering the arguments of both parties, feels that it has to agree with that submitted by the company respondent on appeal and accepted by the Court of first instance. It is true that Article 15 of Chapter 56 provides that a note of enrolment would be deemed registered on the same day that this is received by the Public Registry, without any further formalities required, but this notwithstanding the same Article and, on a more general level, the Act itself, refers to notes of enrolment relating to transfers and creation of causes of preferences and not also to the registration of warrants of prohibitory injunction. The Public Registry Act deals with registration of <u>notes of enrolment</u>, and nowhere does it regulate with the said warrants. In fact, in the case of transfers of immovable property or the creation of causes of preference, the public deeds from which

---

[1] The issue of this warrant is today regulated by article 874 of the same law, however the procedure for registration of the warrant remained the same.

they emanate are not registered; it is only the notes including the details required according to law which are registered, and this Chapter 56 was created, indeed, to regulate the content and presentation of these notes. With regards to the procedure contemplated in Article 873(5) et seq, no note is registered, but a copy of the warrant itself. It is for this reason that the law requires that these warrants are to be registered/ entered into a register created specifically for this purpose and requires that this register have an index which is accessible to all. It is therefore obvious to this Court that the meaning of the word " registration" used in Article 873 (10) is not attributed the meaning of the same word used in a different context, however the meaning attributed to the word must be one used in the context of the law in question.

Once, in this case, the law requires that warrants are registered and indexed in such a way that they can be seen by the public, it is clear that the penalty of nullity can be invoked only after this procedure has been carried out, as it is only after the registration and indexing as at the disposal of " everyone" is it logical and just that an act done in violation of the warrant be declare null and void.

It is not questioned that one may, and is able to, from here or there, find out about the issue of a warrant, even by seeking access to the box file kept at the Public Registry ( in which the warrant is placed), however the law considers an act null if it is one which is done in violation of a warrant of prohibitory injunction if the act was committed after the procedure described above, as required by the law.

The nullity of public contracts should not be easily declared, and each sanction that can lead to the invalidity of them should not be interpreted widely. The legislator had a motive behind the implementation of the procedure for the registration of warrants of prohibitory injunction, the motive was so that these are available immediately and indexed so that the public would be able to find out about them in a more expedient and simple way. It is after this ' publicity' that the law imposes nullity. This motive would be defeated if the act is deemed null simply because it was done after the warrant had arrived at the office of the Public Registry, but before the 'publicity' procedure takes place, as required by law.

The "interpretation" of the Officials working at the Public Registry is also irrelevant regardless of the internal practices which have been moulded by them over the years. The procedure contemplated in Article 873(9) is a particular one, different from any other, and that which is the practice adopted for the purposes of the notes of enrolment, is not necessarily applicable in other situations. Rather, as it was proved, in this case, the registration procedure is different, according to law, and it is this specific procedure which has got to be followed.

Therefore, the grievance of the Appellant Companies should not be accepted.

This Court feels that, in this case, it will not hesitate to reproach and censure in the strongest of manners the Director of Public Registry of the time who permitted a situation like this to develop. It results that not only was an official allowed to leave his place of

work before his working time was up, but that the Director or his Assistant did not provide for such a deficiency by ensuring that what is required by law is carried out by some other officer or by himself, being the person responsible for the implementation of the law. In fact, the official responsible for the indexing admits that the warrant (*the injunction papers*) arrived at the Public Registry at 1.30pm, at a time when he had already left. The Assistant Director also gave evidence that when he took the warrant in question for indexing "there was nobody at the time in the *indexing department.*" The Assistant Director, instead of tending to the registration himself, as his role demands, just left the warrant there until it was registered four days later by the official in charge! The law demands that the procedure for the registration takes place 'immediately', that means that very minute, and the Director or his Assistant had to ensure that the provisions of the law are followed *ad literam* and not because nobody happened to be (!) in the indexing section, the warrant gets left on the table. This Court, therefore, feels that it should reserve in favour of Appellants any action for damages against the Director of Public Registry and/or any official in the same department *si et quantenus*.

For the reasons expressed, the Court denies the appeal submitted by the Defendant Companies and confirms the challenged judgement.

Expenses of the Court of first instance remain as decided by the first Court, while those of the appellate proceedings are to be paid by the Defendant Companies *in solidum*.

<Final Judgement>

--------------------------------------------------The End--------------------------------------------------

This is a true literal translation of the original in the Maltese language

M. Firman

P.L. Madeleine Firman



COURTS OF JUSTICE - MALTA
SIGNED AND SWORN BEFORE ME
DAY OF [signature]
R. M. VELLA
Commissioner for Oaths

9