This is to certify that the attached document is a true photocopy of the original.





1. Plaintiffs
2. David Peter Bennet
3. First
4. Exhibit "DPB 1"
Sworn: 21st November 2002

IN THE MATTER OF

IN THE HIGH COURT OF JUSTICE IN MALTA

B E T W E E N :

(1) ERIDAN SHIPPING LTD
(2) KAMA II SHIPPING CO LTD,
(3) ANTARUS SHIPPING CO LTD
(4) FERRUM SHIPPING CO LTD
(5) KAMA RIVER SHIPPING CO LTD

<u>Plaintiffs</u>

-and-

(1) STANISLAV FILATOV
(2) IRINA FILATOVA
(3) VADIM VORONINE
(4) ANNA FILATOVA
(5) EVGUENI FILATOV
(6) CAPES SHIPPING SERVICES INC
(7) RIVER-SEA SHIPMANAGEMENT LTD
(8) EI HOLDINGS LTD

<u>Defendants</u>

---

**FIRST AFFIDAVIT OF DAVID PETER BENNET**

---

I, DAVID PETER BENNET, of Clyde & Co, Beaufort House, Chertsey Street, Guildford, Surrey, GU1 4HA, MAKE OATH AND SAY as follows:-

1. I am a Partner in Clyde & Co, a firm of English solicitors, acting for the Plaintiffs listed above. I am an English solicitor qualified to practice law in England and Wales. I am authorised to swear this Affidavit on behalf of the Plaintiffs in support of their lawsuit which was filed in Malta on 18th February 1999 under Writ of Summons 411/99/GV.

2. The facts and matters set out in this Affidavit are within my own knowledge, save as where otherwise appears from the context, and I believe them to be true. Where any fact or matter is not within my knowledge, I give the source of it and I confirm that such fact or matter is true to the best of my belief.

3. I have had produced and shown to me, a bundle of documents marked "DPB 1", which forms the Exhibit to this Affidavit. Unless otherwise stated, page numbers hereinafter refer to the pages in "DPB 1".

4. Mr Todor Hristov Vassilev approached us in September 1998 and requested us to assist him in retrieving statements of bank accounts of companies that he represented, namely the First and Second Plaintiffs in the above-mentioned lawsuit (hereinafter referred to as "the Maltese Plaintiff companies") held with Hambros Bank.

5. M Vassilev explained to us that Mr Stanislav Filatov (a Defendant in the said lawsuit) had instructed Hambros Bank to effect various transfers from the accounts of the Maltese Plaintiff companies held with the Bank. The Maltese Plaintiff companies wanted to investigate the purpose of those transactions in order to determine whether those transfers were unauthorised and illegal.

6. Mr Vassilev explained to us that Mr Filatov was a director of the Maltese Plaintiff companies, and that during his directorship, he had illegally misappropriated various sums of money for his own end. Mr Vassilev explained to me that Mr Filatov managed to appropriate company funds because he effectively controlled the Maltese Plaintiff companies' bank accounts.

7. I was also informed by Mr Vassilev that the main shareholder of the Maltese Plaintiff companies (Kama River Shipping, of Perm, Russia, also a Plaintiff in the said proceedings), had suspected Mr Filatov's illegal actions. It was at this point that the investigations started.

8. Mr Vassilev, in the course of his investigations, wanted us to help him obtain directly from Hambros Bank, or rather Societe Generale as it had then become following Societe Generale's acquisition of Hambros, statements of those accounts depicting the

transfers that were made between the years 1993 and 1997. We understand this period to be the time when Mr Filatov carried out the alleged illegal actions. Mr Vassilev needed these documents "inter alia" to help him prove in Court that certain bank transfers were made during this period.

9. We assisted Mr Vassilev by liaising with Hambros Bank on his behalf and requesting that they make available the bank statements and advices requested by Mr Vassilev. This first required us to satisfy the Bank that Mr Vassilev was a properly authorised office of the Maltese Plaintiff companies. This we did by obtaining an advise from Prof. J. M. Ganado and Associates, Maltese lawyers. Such firm provided to us Good Standing Certificates for each of the Maltese Plaintiff companies and confirmed that the fact that the Register of each of the respective companies depicted the Board of Directors as being made up of the individuals indicated in the Good Standing Certificates, meant that third parties were safeguarded under Maltese law if they relied on the authority of any of the said Directors. We informed Simon Day, who was the person at Hambros Bank with whom we dealt, and who was the Manager of the Shipping Department of the Bank responsible for handling accounts, of this.

10. We then attended the offices of Hambros Bank at Exchange House, Primrose Street, accompanied by Mr Vassilev, on 25th November 1998. We explained to Simon Day what we were looking for. During that visit and over approximately the next month, Simon Day then arranged to provide to us copies of bank statements, and certain advices underlying the items on the bank statements, as requested by Mr Vassilev.

11. I have reviewed the Affidavit of Mr Vassilev dated 10th April 2002 sworn in front of Oguz Teoman and consisting of 15 pages. I examined the attachments to that document particularly the last 43 pages, being the contents of subfolders "EVIDENCE 3.1" and "EVIDENCE 3.2".

12. In regard to these documents I can state that the bank statements and advices that appear attached thereto are documents that were obtained from Hambros Bank. I know this because I have kept copies of the statements and advices that were provided to us by Simon Day on behalf of Hambros Bank. I have checked the copies that I have retained on my file and can confirm that each of the documents in subfolders "EVIDENCE 3.1" and "EVIDENCE 3.2" is amongst such documents.

13. I should explain that obtaining documents from the Bank was not easy because, as explained to me by Simon Day, the Bank was extremely busy at the time transferring accounts from Hambros to Societe Generale, and were, according to Simon Day, very short-staffed. In addition, he informed me that the Hambros systems had at that time virtually closed down and there were very few former Hambros employees who were familiar with the systems, and whom he could ask to retrieve the information we were seeking. Simon Day informed me during a telephone conversation on 19th November 1998, that he was extremely reluctant to go through the process of obtaining underlying advices to the entries on the bank statements, and indeed was not certain that it would be possible to locate them in any event as a result of the Bank's take-over. He said that we would have to identify the specific transactions for which we wanted the advices. Even then it may take someone 2 or 3 days of searching to find the requested advices. Apparently they were all kept on microfiche, but were arranged chronologically rather than by account. It would be necessary, he said, to search through the microfiche entries of every transaction the Bank did on a particular day to identify the specific advice relating to either of the two accounts.

14. On 18th December 1998, in a telephone conversation that I had with Simon Day, he stated that if any advices were now missing, this was because there was a problem with the way in which they had been microfilmed. He was confident, therefore, that the Bank had provided us with all the documents that they possibly could from their records. He also mentioned that the lady within the Bank who had been retrieving the documents had been kept on an extra week especially for this job. He informed me, however, that the 18th December 1998 was her last day at the Bank, and that if there were any further requests for documents, they would have nobody left who was familiar with the Hambros system. In light of that information, I believe that today it is reasonable to assume that it would be practically impossible to retrieve any further information from the Bank.

15. I confirm that Mr Todor Hristov Vassilev paid USA $3,000 to the Bank in order to get hold of the statements and advices, and I attach at page 1 of "DPB 1", the invoice issued by the Bank.

16. Clyde & Co charged the Plaintiff Maltese companies a total for our costs and disbursements (including the payment of US $3,000 to Hambros) of STG £6,092.98. Our invoices are at pages 2 and 3 of "DPB 1".

*David Bennet*

Sworn at )

BRIGHT & WRIGHT
54 CHERTSEY STREET, GUILDFORD,
SURREY GU1 4HD

this 21st day of November 2002 )

Before me )

(P ANDREWS)

A Solicitor / ~~Commissioner empowered to swear~~ Oaths

1. Plaintiffs
2. David Peter Bennet
3. First
4. Exhibit "DPB 1"
Sworn: 21st November 2002

IN THE MATTER OF

IN THE HIGH COURT OF JUSTICE IN MALTA

B E T W E E N :

      (1) ERIDAN SHIPPING LTD
      (2) KAMA II SHIPPING CO LTD,
      (3) ANTARUS SHIPPING CO LTD
      (4) FERRUM SHIPPING CO LTD
      (5) KAMA RIVER SHIPPING CO LTD           **Plaintiffs**

-and-

      (1) STANISLAV FILATOV
      (2) IRINA FILATOVA
      (3) VADIM VORONINE
      (4) ANNA FILATOVA
      (5) EVGUENI FILATOV
      (6) CAPES SHIPPING SERVICES INC
      (7) RIVER-SEA SHIPMANAGEMENT LTD
      (8) EI HOLDINGS LTD           **Defendants**

---

## EXHIBIT "DPB 1"

---

This is the Exhibit "DPB 1" referred to in the Affidavit of DAVID PETER BENNET, on behalf of the Plaintiffs, dated the 21st day of November 2002.

*[signature: David Bennet]*

DAVID PETER BENNET

*[initials]*

Shipping Co Ltd
iziltan Sokak
Apt 7/9
inbakkal
ikoy
anbul
r Ref: Todor Vassilev

# CLYDE & CO
AN INTERNATIONAL LAW FIRM

Beaufort House, Chertsey Street,
Guildford GU1 4HA.
Telephone: 01483 55 55 55  Telex: 8594777 Clyde G
Facsimile: 01483 56 73 30
DX: 2406 Guildford

VAT Registration No: GB 243 2064 96

te: 8 December 1999

Our Ref: DPB /CMK /9705567

erim Account

VAT %

Anna John"

nvoice Period 16/12/98 - 07/12/99

Professional Fees

|  | | |
|---|---|---|
| | 690.50 | 0.00 |
| Disbursements | 73.80 | 0.00 |
| Courier Fees | 114.47 | 0.00 |
| Postage, Telecommunication charges & Photostat Documents | 1,954.61 | 0.00 |
| Incidental Expenses (including payment to Hambros Bank) | | |

Fees and Disbursements        STG    2,833.38

ESS: Monies received on account        -1,820.94

Balance Due  STG    1,012.44

*signature*

is is outside the scope of UK VAT

ABW /B3
Rights appear overleaf.

\* Indicates the amount is unpaid.

under the Financial Services Act 1986

...ipping Co ...
...ziltan Sokak
Apt 7/9
...nbakkal
...ikoy
...tanbul

# CLYDE & CO
AN INTERNATIONAL LAW FIRM

Beaufort House, Chertsey Street,
Guildford GU1 4HA.
Telephone: 01483 55 55 55  Telex: 8594777 Clyde G
Facsimile: 01483 56 73 30
DX: 2406 Guildford

VAT Registration No: GB 243 2064 96

Our Ref: DPB /CMK /9705567

...ate: 18 December 1998

...nterim Account                                                              VAT
                                                                                %

"Anna John"

Invoice Period 04/09/98 - 11/12/98

To Professional Fees as per the
attached narrative.                                            3,202.40      .00

Disbursements                                                     57.20     0.00
Postage, Telecommunication Charges,
Photostat Documents & Incidentals

                                                         £     3,259.60
Fees and Disbursements                                        -3,259.60
LESS: Monies Received On Account
                                     Balance Due         £         0.00

* * * * *  F I L E   C O P Y  * * * * *

This is outside the scope of UK VAT
ABW /B1

                                                          * Indicates the amount is unpaid.

...s of Rights appear overleaf.

Clyde & Co.
Beaufort House
Chertsey Street
Guildford
Surrey GU1 4HA

**Attention: Mr. David Bennet**

Date of invoice (Tax Point): 15 January 1999

Invoice Number 014/99

| Description | $ (USD) |
|---|---|
| 1. Kama II Shipping Co. Ltd<br>2. Kama Malta Shipping Co. Ltd | |
| Fee for producing copy statements and advices for the above companies. | 3,000.00 |
| **Total** | **(USD)$ 3,000.00** |

**Please quote our invoice number when making payment**

Payment due by cheque or bankers payment to:
SOCIETE GENERALE, Accounts Payable Dept
Exchange House, Primrose Street
London EC2A 2HT

Or by direct transfer to:
SOCIETE GENERALE
SORT CODE NO. 20 – 63 – 91
ACCOUNT NO. 9913401

Vat No. 629 2807 22

1. Plaintiffs
2. D P Bennet
3. First
4. Exhibit "DPB 1"
5. Sworn: 21st November 2002

## IN THE MATTER OF

## IN THE HIGH COURT OF JUSTICE IN MALTA

B E T W E E N :

(1) ERIDAN SHIPPING LTD
(2) KAMA II SHIPPING CO LTD,
(3) ANTARUS SHIPPING CO LTD
(4) FERRUM SHIPPING CO LTD
(5) KAMA RIVER SHIPPING CO LTD
**Plaintiffs**

-v-

(1) STANISLAV FILATOV
(2) IRINA FILATOVA
(3) VADIM VORONINE
(4) ANNA FILATOVA
(5) EVGUENI FILATOV
(6) CAPES SHIPPING SERVICES INC
(7) RIVER-SEA SHIPMANAGEMENT LTD
(8) EI HOLDINGS LTD
**Defendants**

---

### FIRST AFFIDAVIT OF
### DAVID PETER BENNET

---

CLYDE & CO
Beaufort House
Chertsey Street
Guildford
Surrey, GU1 4HA

Tel: 01483 555 555
Fax: 01483 567 330
Ref: DPB/ 0211023

GLDLIT 389004.01                    6