OFFICE TRANSLATION

**In the First Hall of the Civil Court**

Writ of Summons number 411/99

**THE HON. JUDGE GEOFFREY VALENZIA**

27th February, 2006

>  Dr. Jotham Scerri Diacono as special mandatory for and in representation of Eridan Shipping Ltd., Kama II Shipping Co. Ltd., Antarus Shipping Co. Ltd., Ferrum Shipping Co. Ltd., and for any interest that it may have Kama River Shipping Corporation Ltd. a foreign company registered in Perm, Russia and by means of a minute dated 8th February, 2001, Todor Hristov Vassilev assumed judicial representation all the plaintiff companies instead of Doctor Jotham Scerri Diacono, and by means of a minute dated 27th November, 2001, Ms. Galina Oganesian assumed representation of the plaintiffs in the lawsuit instead of Todor Hristov Vassilev
>
> -versus-
>
> Doctor Joseph Azzopardi and Legal Procurator Joanna Dingli who were appointed by a Court Decree dated 8th February, 1999 as deputy curators to represent the absent Stanislav Filatov and his wife Irina Filatov; and CAMCO (Nominee) Limited for on behalf of and in representation of the Maltese companies River-Sea Shipmanagement Limited and E.I. Holdings Limited and by means of decree dated 26th February, 1999 Dr. Joseph Azzopardi and P.L. Joanna Dingli were appointed deputy curators to represent Evgeuni Filatov,

1

>Anna Filatova, Vadim Veronine, and the foreign company Capes Shipping Services Inc and by means of a decree dated 5th March 2003, Camco (Nominee) Ltd assumed, as liquidator, the representation of River-Sea Shipmanagement Ltd and E. I. Holdings Ltd and by means of decree dated 27th May, 2003 Dr. Joseph Azzopardi was substituted by Dr. Renzo Poresella Flores.

The Court

**Preliminary**

Having seen the writ of summons by means of which the plaintiff company submitted:

- Whereas between the period from January 1993 till February 1998 the defendant Stanislav Filatov was or assumed in an irregular manner the capacity of director of the company *Eridan Shipping Ltd;*

- And whereas during the period from March 1995 till February 1998 the defendant Stanislav Filatov was or assumed in an irregular manner the capacity of director of *Kama II Shipping Co. Ltd;*

- And whereas during the period from May 1995 to February 1998 the defendant Stanislav Filatov was or assumed in an irregular manner the capacity of director of *Antarus Shipping Co. Ltd;*

- And whereas during the period from May 1995 to February 1998 the defendant Stanislav Fiatov was or assumed in an irregular manner the capacity of director of the company *Ferrum Shipping Co. Ltd.*

- And whereas during this period in his capacity of director of *Eridan Shipping Ltd, Kama II Shipping Co. Ltd, Antarus Shipping Co. Ltd and Ferrum Shipping Co. Ltd,*

the defendant Stanislav Filatov misappropriated for his benefit or for the benefit of the other defendants whosoever of them, money, assets and other chattels that belonged to the aforementioned companies, without any authorization to do so and in a fraudulent, illicit and illegal manner, as will be proven during the hearing of the lawsuit;

- And whereas although the defendant Stanislav Filatov was verbally requested to refund the funds and to return the assets and other chattels that he had misappropriated, he failed to do this and tried to cover up his illegal acts by destroying evidence that could be used against him;

- And whereas for this reason the defendant Stanislav Filatov is obliged to return and to refund the money, assets and other things that belong to the plaintiff company, that were illegally misappropriated, and whilst the other defendants who benefited from the illegal acts of the defendant Stanislav Filatov, are equally obliged to return or to refund the money, assets and other chattels that they received and that belong to the plaintiff companies;

- Therefore, the defendants must state why this Court is not to, saving any necessary declaration:

    1. Decide and declare that the defendant Stanislav Filatov, during the period of 1993 – 1998 misappropriated for himself and for his benefit and/or for the benefit of the other defendants money, assets and other things which belonged to *Eridan Shipping Limited* without being authorised and/or fraudulently in an illicit and illegal manner.

2. Quantify the amount of money and identify the assets and other chattels that belonged to *Eridan Shipping Ltd* that were illegally misappropriated as above mentioned by the defendant Stanislav Filatov.

3. Order the defendants, or whosoever of them, to restore to plaintiff company *Eridan Shipping Ltd* the money, assets and other chattels as quantified and identified by the Court, that were misappropriated by the defendant Stanislav Filatov in order that Eridian Shipping Ltd be reinstated *in integrum*.

4. Decide and declare that the defendant Stanislav Filatov, during the period of 1995 – 1998 misappropriated for his benefit and for the benefit of the other defendants money, assets and other chattels that were the property of *Kama II Shipping Co. Ltd.* without being authorised to do so, and in a fraudulent, illicit and illegal manner.

5. Liquidate the money and identify the assets and other chattels that belonged to the company *Kama II Shipping Co. Ltd.* that were illegally misappropriated by the defendant Stanislav Filatov as mentioned above.

6. Order the defendant, or whosoever of them, to return to the plaintiff company *Kama II Shipping Co. Ltd.* the money, assets and other chattels that were misappropriated by the defendant Stanislav Filatov and that have been liquidated and/ or identified in order that the company Kama II Shipping Co. Ltd is reinstated *in integrum*.

7. Decide and declare that the defendant Staislav Filatov during the period 1995 – 1998 misappropriated money, assets and other chattels that were the property of the company *Antarus Shipping Co. Ltd.* for his beneifit and for

the benefit of the other plaintiffs without being authorised to do so and in a fraudulent, illicit and illegal manner.

8. Liquidate the amount of money and to identify the assets and other chattels belonging to the company *Antarus Shipping Co. Ltd.* which were illegally misappropriated by the defendant Stanislav Filatov as above mentioned.

9. Order the defendants, or whosoever of them, to return to the plaintiff company *Antarus Shipping Co. Ltd.* money, assets and other chattels that were misappropriated by the defendant Stanislav Filatov, thus liquidated and/or identifiable in order that the company Antarus Shipping Co. Ltd be restored *in integrum*.

10. Declare and decide that the plaintiff Stanislav Filatov, during the period 1996-1998 misappropriated money, assets and other chattels that were the property of the company *Ferrum Shipping Co. Ltd*, for his benefit and/or in a fraudulent, illicit and illegal manner.

11. Liquidate the amount of money, identify the assets and other chattels belonging to the company *Ferrum Shipping Co. Ltd.* that were illegally misappropriated by the defendant Stainslav Filatov as mentioned above.

12. Order the plaintiffs, or whosoever of them, to return to the plaintiff company *Ferrum Shipping Co. Ltd* the money, assets and other chattels that were misappropriated by the defendant Stanislav Filatov, thus liquidated and identified in order that the company Ferrum Shipping Co. Ltd be restored *in integrum*.

With costs including those of the warrant of prohibitory injunction number 3743/98 in the abovementioned names, including the application for the appointment of deputy curators which was filed simultaneously with the said warrant of prohibitory injunction, and with legal interest against the defendants, or whosoever of them, and with the reservation that the companies can proceed against the defendant or whosever of them both in Malta and even out of Malta.

Having seen the declaration of the plaintiff companies at page 3 of the Court file:

Having seen the statement of defence of the defendant company Camco (Nominee) Limited at page 18 of the Court file where it pleaded:

(1) That plaintiffs' demands in regard to the defendants are unfounded in fact and at law and should be rejected with costs against the plaintiffs.

(2) That the defendant company, according to Chapter 330 of the Laws of Malta is not deemed to be resident in these Islands and as such no proceedings can be instituted against it before the First Hall of the Civil Court, since the First Hall of the Civil Court does not have jurisdiction over the defendant company.

(3) That without prejudice to the above, the defendant company submits that it does not have any juridical relationship with the plaintiff in regard to the allegations mentioned in the writ of summons and, therefore, should be declared non suited with costs against the plaintiff.

(4) That the allegations mentioned in the premises of the writ of summons with regard to the defendant company are completely vague and unfounded at law

and one can only conclude that amount to nothing more than what the English would call a "fishing expedition" and, therefore, are legally unfounded.

(5)    Saving further pleas.

Having seen the statement of defence of the defendant curators Dr. Joseph Azzopardi and Legal Procurator Joanna Dingle nomine at page 23 of the Court file were they pleaded:

(1) That they are not briefed about the facts of this lawsuit and they, therefore, reserve the right to file their defence at a later stage.

Having seen the statement of defence of the defendant curators Dr. Renzo Porsella-Flores and Legal Procurator Joanna Dingli nomine at page 435 of the Court file where they pleaded:

1.    That primarily Galina Oganesian (the current plaintiff) has to give proof of her mandate.

2.    That in any case they do not know anything about the facts of this lawsuit and, therefore, reserve the right to raise their pleas at a later stage.

Having seen the preliminary judgment at page 46 wherein the Court denied the second pleas of the defendants Camco (Nominee) Ltd.

Having seen the decree at page 128;

Having seen the note at page 132;

Having seen the complete record of these proceedings together with the exhibited documents;

Having heard the evidence under oath;

Having seen the written legal submissions of the parties.

## The Facts

The defendant Stanislav Filatov, for some time was the executive director of the plaintiff companies, except for Kama River Shipping Co. Ltd. which was the parent company of these Maltese companies and which is based in Perm, Russia.  The defendant Filatov effectively used to manage these Maltese companies, however according to the plaintiffs, towards the end of his management of these companies, he was acting as a director of the company without the approval of all the shareholders of the said Maltese companies.  At the time when Filatov was an executive director, he had complete control of the money (bank accounts etc) and of the assets of these Maltese plaintiff companies.  Then the parent company decided to start investigating the acts of the defendant and it concluded that the defendant was misappropriating funds and other assets of the plaintiff company with the result that the money was used for the benefit not only of the defendant but also of his wife, daughter, brother and defendant companies of which the defendant was the beneficiary.

## Plaintiffs' Demands

Therefore, the plaintiffs asked for a declaration that the plaintiff Stanislav Filatov appropriated money, assets and other chattels that belonged to the plaintiff companies for

his benefit or for the benefit of the other defendants without any authorisation. The Court was also requested to identify and quantify (liquidate) the amounts due to the plaintiffs, and to order the defendants or whosoever of them, to return to the plaintiff companies the said money, assets and other chattels that defendant misappropriated.

## The Statement of Defence

The defendants stated that they had no relationship whatever with the plaintiff in regard to the allegations made in the writ of summons and these allegations are completely vague and without any juridical basis and, therefore, legally unfounded. The defendants' curators pleaded that they are not briefed with the facts and they should not be liable for the costs of the lawsuit.

## The Considerations of the Court

### Offshore companies

Originally River Sea Shipmanagement Co. Ltd. and E. I. Holdings had the status of offshore companies which then was changed during the hearing of the lawsuit as is shown in the documents which are exhibited on page 84 and 85. Joseph Psaila in his evidence stated that the defendant companies were no longer offshore companies and today they are no longer active (see page 424). Today, under Maltese law, offshore companies do not exist any longer and, therefore, the Court is treating these companies as normal Maltese companies. It results from the above-mentioned MFSA documents that these companies went into liquidation because they failed to abide with Art. 25(2) of what was previously Chapter 330.

9

**Illicit bank remittances - misappropriation**

The defendant companies are contending that assuming that the documents produced by plaintiff were indeed bank remittances, no proof was made, as is required by law, to prove where the funds ended up. The fact that remittances could have been made does not mean that these were made in an illicit manner and without the consent of the shareholders and the previous directors. The shareholders and the previous directors were not asked to given evidence and the proof that was given is based on suppositions and not on concrete facts. Even if the Court does find that Filatov misappropriated money that belonged to plaintiff, it is only Filatov who has to refund what he took.

Todor Vassilev gave detailed evidence on this point before the Court and in the two affidavits he filed, which evidence was not contested.

With regard to the defendant Stanislav Filatov's position in the companies, Vassilev said that *Filatov directed, managed and ran the Kama Group of Companies. He had full control over the operations of the Group and what he would say would be implemented without question.* (This is confirmed by Audrey Cefai, who was Filatov's secretary). *He had full control over the funds and monies of the Group. Up to 1997 he was the sole signatory of all known bank accounts and the sole holder of the test key facility of Hambros Bank used for telex transfers orders. By means of the key facility Filatov could order by telex message transfers from the bank accounts of the Kama Group of Companies to anybody he decided. He was also one of the directors of the four Kama Companies. In 1996 Filatov and his family moved out of Malta to the US to run the companies.*

Vassilev explained what induced the parent company Kama River Shipping Company to start investigations against Filatov (see the evidence of Antonov which confirms this). Vassilev said: "*The Group decided to start investigating Filatov because the Maltese companies were making only losses although the ships of the group were regularly engaged in trade. All investigatory work was carried out on the basis of the documents*

10

*that were left in the archive of the Kama Group of Companies and on the basis of the statement of accounts issued by the servicing banks where the accounts of the Group were held. Filatov destroyed part of the archive because he started suspecting that he was being investigated. Witness traced transactions which evinced money passing out of the companies of the Group to recipients which had nothing to do with the business of the company. He asked the banks, through an English law firm, to produce statements of the accounts and examined cheque book stubs. Witness was responsible for chartering and operating the ships, so he knew what costs and expenses were involved. He found that no proper accounts were being held. They instituted the case against all the defendants because they all benefited directly from the funds that Filatov misappropriated from the Kama Group."*

Then the witness went on to explain in detail how they concluded that there was misappropriation at least, in two particular cases, i.e. in the case of the transfer of the funds to Capes Shipping and the transfer of the money received from the insurance company for the loss of the vessel Volgodon 5064 to Filatov's accounts or to his companies (see page 147 of his evidence).

Vassilev mentioned the transfer that was made in the amount of $11,000 by Filatov from Antarus Shipping Co. Ltd to Capes Shipping Co. Inc based in the United States (see Doc. Evidence 2). These transfers could not have been authorised by Antarus because it had no business dealings with Capes Shipping.

With regard to the Volgodon 5064 matter, Vassillev stated the following in his evidence:

*"Following the grounding of the m/v Volgodon 5054 in November 1995, the insurance company paid Kama Malta Shipping Co. Ltd one million dollars in her account held with Hambros Bank in London. Filatov misappropriated this amount by effecting a number of transfers out of the bank account to his companies River Sea Shipmanagment Ltd, to E. I. Holdings Ltd and to his bank accounts"* (see Evidence 3).

11

As evidence of the allegations he made Vassilev gave the following details, and exhibited the relative documents to corroborate what he stated.

On the 15.1.1996 Filatov made a transfer of US $62,265 to the account of River Sea Shipmanagement Ltd at BOV Int. Limited. – Invoice 8.1.96 (evidence 3.2.2.)

On the 16.4.1996 a transfer of US $166,620 was made to E.I. Holding Ltd. BOV Int. Ltd. (evidence 3.2.3). Vassilev states that the Kama Group of Companies had no dealings with E. I. Holdings Ltd.

On the 23.4.1996 Filatov effected a transfer of US $48,000 into his account with BOV Int Limited for "Management fees" (evidence 3.2.4).

On the 9.5.1996 Filatov effected a transfer of US $48,131 to E.I. Holdings for Kama Shipping expenses (evidence 3.2.5).

On the 17.5.1996 Filatov effected a transfer to the bank account of J & M Parnis England for the amount of US $32,000 settlement of consultancy fees (evidence 3.2.6). Vassillev states that there was no such agreement with J & M Parnis England for consultancy services. No request is being made for these funds.

On the 20.5.1996 Filatov effected a transfer to E.I. Holdings Ltd for US$290,000 for "settl. of agreement 190496 (evidence 3.2.7) Vassilev states: *"no such agreement existed and no services were rendered by E.I. Holdings Ltd. to Kama Malta Shipping"*.

On the 20.5.1996 Filatov effected a transfer to River Sea Shipmanagment Ltd of US $310,000 for "settl. Of agreement 190496". (Evidence 3.2.8).

On the 18.8.1996 Filatov effected a transfer of $25,000 to E.I. Holdings Ltd in settlement of Kama Shipping expenses (evidence 3.2.9).

12

On the 30.7.1996 Filatov effected a transfer of $62,000 to E.I. Holdings Ltd in settlement of Kama Shipping expenses (evidence 3.2.10).

Vassillev stated in his evidence "*all these transactions were done without the knowledge, authorisation and approval of the Board of shareholders of Kama Malta Shipping Co. Ltd... in just 8 months Filatov managed to misappropriate US $1,043,656 from the account held with Hambros Bank Ltd.*"

The funds that the plaintiff is requesting are those indicated in page 150 of the court file in the amount of US $1,043,656. To this sum the amount of $11,000 must be added that as already mentioned was transferred to Capes Shipping without authorisation. In all, US$1,054,656.

Vassilev carried on stating that: "*there are other transactions which were not authorised, but plaintiffs are limiting their claim for this amount to avoid further expenses. For instance Filatov used to pay the expenses which should have been paid by River Sea Shipmanagement Ltd. Filatov's company, for bare-boat charters, with money from Kama Malta Shipping Co. Ltd.*"

In his second affidavit Todor Vassilev however declares that "*plaintiffs are now restricting their claim to USA $1,000,000 against Filatov and are waving the claims against his family members and relatives.*"

**Filatov and his companies**

The defendants submitted that plaintiffs' demands should be rejected because the direct link with the defendant companies River Sea Shipmanagement and E. I. Holdings was not proven and neither was it proven that they were the final beneficiaries.

In this regard Vassilev gave evidence with regard to the relationship that existed between Filatov and the companies to whom the transfers of the funds were effected and the

13

plaintiff companies. He said that Filatov was "the beneficial shareholder of River Sea Shipmanagement Ltd. E. I. Holdings Ltd and River Sea Ltd. These three companies shared the premises of the plaintiffs companies at South Street, Valletta. Filatov was the only person signing documents on behalf of these three companies". This was confirmed by Audrey Cefai, Filatov's secretary and by Joseph Psaila on page 424.

With regard to the relationship between Filatov and Capes Shipping Inc of the USA Vassilev stated that "*when Filatov settled in the US we were able to contact him at the telephone/faxes of Capes Shipping Inc.*" Stephen Parnis England confirmed that Filatov was working for Capes (see fol. 457).

**The Court Considered**

That from the examination of all the evidence produced, this Court has a clear picture of how the defendant Stanislav Filatov used to transfer money from the plaintiff companies bank accounts at Hambros Bank, London, for his benefit and for the benefit of his companies, that is the other defendants. This results in great detail from the evidence produced by the plaintiffs. These transfers were effected on the instructions of the defendant Filatov who was the person solely responsible for the running of the Maltese companies. This defendant was able to do all this because he had the complete control of the financial aspects of the plaintiff companies. It has been proven that the Board of Directors and the shareholders did not authorise Filatov to effect these transfer against the interests of the Maltese companies and in the interest of Filatov personally or of his company (see evidence of Antonov and minutes of meetings which have been exhibited).

By way of example of all this, is the transfer of funds by Filatov for $11,000 from the company Antarus Shipping Co. Ltd to Capes Shipping Co. Inc. of the United States which was mentioned. This could not have been authorised by Antarus since it had no business relationship with Capes Shipping.

Besides, evidence was produced which showed that in a period of eight months Filatov withdrew the amount of $1,043,656 from the plaintiff companies' bank accounts with Hambros Bank London and transferred those funds to his personal bank account or to a bank account of his company River Sea Shipmanagement Ltd, E.I. Holdings Ltd. All this was done by Filatov without him being authorised to do so and when all those funds were not due during that period of eight months.  Todor Vassilev presented documentary evidence of the amount of money that was transferred and in which bank accounts the funds ended up.  Vassilev explained that the Kama Group had no business relationship with E. I. Holdings Ltd., therefore, the transfers that were effected to this company could not have been authorised or approved by Kama Malta Shipping Co. Ltd's Board or shareholders.  It has been established that Filatov was the beneficial shareholder of River Sea Shipmanagement Ltd., E.I. Holdings Ltd and River Sea Ltd and he was the person who used to sign and appear on behalf of these companies and he used to deposit the money which he used to take into these companies.  In regard to Capes Shipping Ltd of the U.S.A., it has been proven (see the evidence of Stephen Parnis England and Vassilev) that Filatov used to work with Capes and he used to be reached at this company by telephone/faxes, and the plaintiffs did not have any business relationship with this American company.

On the other hand, the defendants (apart from the curators) did not bring any evidence to justify the transfers about which plaintiffs presented documentary evidence and which the latter state were made without any authorisation and were fictitious.

**Solidarity between defendant companies**
It has been established that the defendant companies, through which Filatov used to operate, received the funds which Filatov had misappropriated, and for this reason they are obliged, together with Filatov, (see also article 1094 of Chapter 16) to refund to plaintiff these funds.  The defendant companies had participated in misappropriation of funds in the sense that their director, Filatov, had committed a criminal act, and these companies that originally were offshore companies, served as a cover up for Filatov to hide behind.  (see Court of Appeal Judge A. Magri et vs Aeroflot Russian Int. Airlines et

15

1/7/2005; First Hall of the Civil Court GCD E. Leone Enriequez et vs Dr. A. Farrugia et 12/12/1995; Court of Appeal Supermarkets 1960 Ltd vs Le Cram Developments Co. Ltd 22/10/2002 and Court of Appeal Dr. J. Herrera noe vs t. Tabone et noe 15/3/1996 amongst others).

**Requested funds**

The funds that are being claimed back by plaintiffs are US $ 1,043.656 and US $11,000, altogether **US 1,054,656.** In his second Affidavit Vassillev mentions three figures which he is requesting: US $ 1,054,656; US $ 1,054,767 and US $ 1,000,000. This latter figure Vassillev mentioned when he states that they are going to limit themselves to this sum because of the increase in expenses (see page 348). However, in their note of submissions the plaintiff insists again that the amount claimed is of $ 1,054,656. According to plaintiff the amount of US $1,054,656 had to be divided as follows:

i. The defendant Filatov has to refund the amount of US$80,000 (US$48,000 and US$32,000) to the plaintiff company Eridan Shipping Ltd;
ii. The defendant in solidum with River-Sea Shipmanagement Ltd has to refund the amount of US$372,265 (US $ 62,265 u US$310,000) to the plaintiff company Eridan Shipping Ltd.
iii. The defendant Filatov in solidum with E.I. Holdings Ltd has to refund the amount of US$591,391 (US$166,260 and US$48,131, and US$25,000 and US$62,000 and US$290,000) to the plaintiff company Eridan Shipping Ltd;
iv. The defendant in solidum with Capes Shipping Services Inc. has to refund the amount of US $ 11,000 to Antarus Shipping Co. Ltd. (originally called Kama Malta 1011 Shipping Co. Ltd).

**The Decision of the Court**

For the above reason,

The Court decides,

Besides denying the defendants' statements of defence,

16

Grants plaintiffs' demands;

Declares that the defendant Stanislav Filatov misappropriated himself from funds, assets and other things which were the property of the plaintiff companies for his benefit and/or the other defendants without being authorised and/or in a fraudulent and/or in an illegal and illicit manner;

Liquidates the amount of US$1,054,656 as the amount that was illegally misappropriated by Stanislav Filatov;

Orders that the defendants refund the amount liquidated to the plaintiff companies;

With costs and interest against the defendants;

Provided that the fees due to the curators have to be paid by the plaintiffs;

Irina Filatova, Evgeuni Filatov, Anna Filatova and Vadim Veronine are declared non suited and freed from the effects of this judgement and their related costs are to be borne by defendants.


Signed:


This is a true and faithful translation of the Maltese original.

**Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing translation is true and correct.**

_M. Firman_
_____
Legal Procurator Ms. Madeleine Firman

24th May 2007.

COURTS OF JUSTICE - MALTA
SIGNED AND SWORN BEFORE ME,
DAY OF May 2007
M. SPIT...
Commissioner to...

17